**In re SEYCHELLES, A Partnership, Debtor.**

**Philip I. PALMER, Jr., Interim Trustee, Plaintiff,**

v.

**William M. TODD, Trustee, et al., Defendants.**

**Bankruptcy No. 382–01580–F.**
**Adv. No. 382–01433.**

United States Bankruptcy Court, N.D. Texas, Dallas Division.

Feb. 22, 1983.

D.M. Lynn, Moore & Peterson, Dallas, Tex., for petitioning creditors, Robert L. Wheelock, III and Banyan Corp., two gen. partners of Seychelles.

Philip I. Palmer, Jr., Dallas, Tex., trustee.

Armoqida & Coats, P.C., and Robert C. Maley, Jr., Mark E. Browning, Sheinfeld, Maley & Kay, Houston, Tex., for Genius Corp.

## MEMORANDUM OPINION

JOHN C. FORD, Bankruptcy Judge.

On December 21, 1982, the duly appointed interim trustee Philip I. Palmer, Jr., filed an Application to sell, free and clear of liens, 130.352 acres of undeveloped land in Tarrant County, hereinafter the 130 acres, representing substantially all of the debtor's assets. The debtor, Seychelles Partnership, was formed in the Summer of 1979 to acquire, own, hold, and develop the 130 acre tract of land located north of Dallas Fort Worth Airport. Two interrelated issues are presented by this case: the authority of the interim trustee to conduct such a sale in light of the attempted conversion of the case from Chapter 7 to Chapter 11 by Genius Corporation; and whether the sale at a price of Six million nine hundred thirty seven thousand one hundred forty nine dollars ($6,937,149.00) should be approved. Upon consideration of the pleadings on file, the arguments of counsel, the briefs submitted, and the testimony at the two hearings, pursuant to Bankruptcy Rule 752, the Court enters the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

An involuntary Chapter 7 petition was filed against the debtor by two of its fourteen general partners, Banyan Corporation, and Robert L. Wheelock, III, on November 23, 1982. An Order for Relief was entered by the Court on December 16, 1982. An interim trustee was appointed on December

21, 1982, and Notice of this appointment was filed on December 23, 1982. Then on December 23, 1982, Genius Corporation, one of the nonpetitioning general partners of the debtor allegedly acting as managing general partner of the debtor, filed a "Notice of Conversion." On January 7, 1983, the Seychelles, purportedly acting as "debtor in possession" moved this Court to dismiss the interim trustee's application for sale free and clear of liens citing, *inter alia* Section 348(e) of the Bankruptcy Code, claiming the interim trustee lacked authority to proceed now that the case was converted to a Chapter 11 case. Alternatively, it was argued that there was no urgency to the sale and that a continuance should be granted. The Court denied the motion for continuance since there was adequate notice and no surprise to the parties.

The question of conversion of the case is thoroughly considered in the companion opinion in this case, Case No. 382–01580. For simplicity, however, the Court notes here that it determined that the attempted conversion was not proper; therefore, the interim trustee has authority to go forward with the contemplated sale of the property. Even *assuming arguendo* that the Court is wrong on the question of conversion, the instant sale is approved because the case is either a Chapter 7 or a liquidating Chapter 11. It is apparent that the partnership can not agree on the disposition of the land, nor could it agree on a Plan of Reorganization

under Chapter 11 even if one could realistically be funded. Therefore, a sale at fair market value, now, of the major asset of the debtor is in the best interest of the estate.[1]

On January 11, 1983, a hearing was held on the interim trustee's application to sell free and clear of liens, notice having been given to all parties, and an Order shortening time to answer having been entered on December 21, 1982. On January 14, 1983, the Seychelles, filed a Motion for Rehearing alleging that not all the facts were before the Court at the prior hearing, that the conversion to Chapter 11 was proper, and that there was fraud committed by Banyan Corporation upon the Debtor. The Court considering all these factors, at a hearing on January 17, 1983, denied the Motion for Rehearing.

The Court reaffirmed its ruling on the conversion issue, and the approval of the sale. The court had sufficient reliable evidence before it at the first hearing to determine that the cash sale price of $6,937,-149.00 was equivalent to the fair market value and that the sale should be approved. Moreover, if the allegations raised in the Motion for Rehearing as to the alleged fraud of Banyan Corporation on the debtor, and the invalidity of Republic Bank's second lien claim secured by a second lien deed of trust on the 130 acres, were shown to be true,[2] the contemplated sale would

---

1. See *In Re Alpine Lumber and Nursery*, 13 B.R. 977 (D.Bkrtcy.S.D.Ca.1981). In that case, the court responding to the debtor's contention that a conversion from an involuntary Chapter 7 to a voluntary Chapter 11 was a conversion within § 706 which resulted in the termination of the interim trustee pursuant to § 348(e) held "that a voluntary request for entry of an Order for Relief in Chapter 11 is not a conversion of the case under 11 U.S.C. § 706 and therefore § 348(e) does not remove the interim trustee from possession of the debtor's estate." *Id.* at 979.

   Although not exactly on point, since in the instant case the interim trustee was appointed after the Order for Relief was entered, *Alpine,* is instructive in finding that an interim trustee may, in some circumstances, even after a conversion from Chapter 7 to Chapter 11, continue serving until further order of the court if neces-

sary to preserve the assets of the estate. As the court in *Alpine* notes,

   "A reading of 11 U.S.C. § 348(e) as urged by the debtor would permit a debtor, whose assets were found to require the appointment of a trustee for their safekeeping, to circumvent the nature and purpose of an involuntary petition by simple expedient of agreeing to the entry of an Order for Relief under Chapter 11 of the Code." *Id.*

   Analogously, in this situation, where the partners admittedly are unable to agree to a sale of property, the court could, conceivably, determine that even if converted to a Chapter 11 under § 706(a) and § 706(b) the interim trustee should continue to serve to preserve the estate.

2. The Court specifically makes no finding on the issue of fraud or the extent of validity of the lien of Republic Bank. The Court notes that the parties appear to agree that Amarillo

still be proper since it is at a fair market value. Since all valid liens will attach to the proceeds of the sale and any claims of fraud may be likewise recovered from such proceeds, these allegations of fraud and questioned validity of the lien of Republic Bank are simply irrelevant to the issue of whether the sale should be approved.

The interim trustee presented a $6,937,-149.00 cash offer made by the Rosewood Corporation for the 130 acres. This offer is a net price out of which no commission and no expenses of sale are to be paid. The offer, by amendment to the original contract of sale provides for acceptance until 5:00 p.m. on January 18 with closing to occur on or before January 20, 1983. There are no other offers by any party at present. The sum of $6,937,149.00 is sufficient to cover the costs of administration and the debtor's two outstanding promissory note obligations secured by deeds of trust on the property. These promissory notes: one payable to the order of First National Bank of Amarillo in the principal amount of Four million dollars ($4,000,000.00) plus Five hundred thousand dollars ($500,000.00) interest, secured by a first lien on the 130 acres, and the second note assigned to Republic Bank of Dallas in the principal amount of Two million three hundred seventy five thousand dollars ($2,375,000.00) plus One hundred twenty five thousand dollars ($125,000.00) interest, secured by a second lien deed of trust, are now fully matured and due.

The interest on the notes held by the First National Bank of Amarillo and Republic Bank is accruing at a rate of Two thousand five hundred dollars ($2,500.00) a day. Since interest or a period of six months would total Four hundred fifty thousand dollars ($450,000.00), an offer for the 130 acres, if obtainable, at Seven million five hundred dollars ($7,500,000.00) (which is within the range of values suggested by the appraiser for the debtor, Mr. Toland), six months from now would leave the debtor just about where it stands under the present offer. (See "Exhibit A" attached to Debtor's Motion for Rehearing). Therefore, delaying the present sale in anticipation of a better offer would be improvident.[3]

Mr. Robert L. Wheelock, III, the Chief Executive Officer and Chairman of the Board of Banyan Corporation, testified that even though the $6,937,149.00 cash sale price would result in a One hundred thousand dollar to Two hundred thousand dollar ($100,000.00 to $200,000.00) short fall which Banyan Corporation will have to cover, he felt the sale should go forward since it was the only way for the debtor to cut its losses. This figure of $100,000.00 to $200,000.00 does not include the One million three hundred sixty thousand dollar ($1,360,000.00) investment which investors in the debtor partnership stand to lose—One Million dollars ($1,000,000.00) of which was invested by Genius Corporation, owner of 50.64% of the debtor. Mr. Wheelock owns 8.8% (per cent) of Banyan Corporation, and he personally, and the shareholders of Banyan Corporation jointly and severally guaranteed the debtor's note to the First National Bank of Amarillo. The shareholders of Banyan Corporation guaranteed the second note held by Republic *pro rata* according to their interests in Banyan Corporation. Mr. Wheelock negotiated the Rosewood Corporation offer. He is an experienced businessman who has, over the last ten years, negotiated over Fifty million dollars ($50,-000,000.00) in real estate transactions. Moreover, Mr. Wheelock stated he has been continuously attempting to sell the 130 acres and has had numerous discussions with brokers over the past six (6) months, producing no other firm offers.

National Bank is an innocent party holding a *bona fide* valid first lien on the 130 acres.

**3.** Under § 70(f) of the Bankruptcy Act the court was authorized to approve sales of real property when such a sale was within seventy-five percent (75%) of its appraised value. Parenthetically, the court notes that the sale price contemplated herein, while not only fair market value, is well within this 75% benchmark even if the court were to find the debtor's appraisal to be accurate, and even without considering the real value of a net price cash sale out of which no expenses or commissions are deducted.

Similarly, David Robert Fransen, a licensed real estate salesman and real estate broker who has worked for three years with David Davidson Real Estate Company, testified about his attempts to locate buyers for the 130 acres, and about other sales of unimproved properties in the airport area. Although Mr. Fransen is not a licensed appraiser, the court found his testimony to be straight-forward and factual. Unlike an appraiser, Mr. Fransen is a broker and worker who makes his living from sales of property, at least seven of which in the past three years have been of undeveloped property similar to the 130 acres in question. Mr. Fransen in stating his opinion that the Rosewood Contract was equal to fair market value for the property, also testified that in the airport area based on comparable sales, the fair market value of land would be $1.10 to $1.50 a square foot which would give a range of values of Six million two hundred twenty nine thousand eighty dollars to Eight million four hundred ninety four thousand two hundred dollars ($6,229,-080.00 to $8,494,200.00) for a 130 acre tract of land. The Rosewood contract is approximately $1.22½ cents per square foot, or Fifty three thousand three hundred sixty eight dollars and sixty eight cents ($53,-362.68) per acre.

For all the foregoing reasons, the court finds that the cash net price of $6,937,149.00 is a fair price for the sale. The Court reiterates that should it be reversed on its ruling on the motion to quash conversion that it would still conclude that the sale be approved as being fair and the best price this debtor can obtain for a sale of the 130 acres on a cash basis, whether this debtor is in a Chapter 7 case or a Chapter 11 case.