**In re Wayne J. KLEIN, Debtor.**

**Nos. 87 C 6670, 86 B 19937.**

United States District Court,
N.D. Illinois, E.D.

Oct. 22, 1987.

---

William M. Brandt, John B. Wolff, Chicago, Ill., for Wayne J. Klein.

Lawrence R. Moelmann, Donald E. Johnson, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for USF & G.

SHADUR, District Judge.

## MEMORANDUM OPINION AND ORDER

Debtor Wayne Klein ("Klein") has appealed one aspect of an order entered earlier this year by Bankruptcy Judge Susan DeWitt, while creditor United States Fidelity & Guaranty Company ("USF & G") may or may not have filed a cross-appeal.[1] Because neither party's initial briefs addressed several serious procedural questions, this Court then directed both sides to treat with those issues by supplemental memoranda. USF & G's counsel has done so in a responsive and workmanlike way, while Klein's has not.[2] For the reasons stated in this memorandum opinion and order:

    1. Klein's appeal is rejected as wholly lacking in merit.

---

**1.** This cryptic statement ("may or may not") will become more clear later in this opinion.

**2.** It is distressing to get such totally inadequate treatment of legal questions from any litigant. It is doubly distressing when the delinquent party is the one who has invoked the appellate jurisdiction of this Court, asking relief that was denied below. Under such circumstances a court would really be within its rights if it were to reject an appeal out of hand—for there are too many deserving litigants in too many other pending cases to allow a court to be imposed upon to do counsel's lawyering for them and for their client.

2. USF & G's attempted cross-appeal (a contingent one, as this opinion will explain) is rejected as not having been perfected.

## Procedural History

On May 13, 1987 Klein moved for leave to convert the previously-filed involuntary Chapter 7 proceeding, brought against him personally late in 1986,[3] to a Chapter 11 proceeding. On May 18 USF & G filed its opposition to the conversion, alternatively moving for appointment of the then-acting Chapter 7 Trustee to continue to serve as Chapter 11 Trustee if conversion were ordered.

After conducting hearings (both evidentiary and for legal argument), on May 29 Judge DeWitt issued her order (1) converting the Chapter 7 proceedings to a Chapter 11 case and (2) appointing the Trustee to serve in the Chapter 11 case. For some unexplained reason the May 29 order did not find its way onto the Bankruptcy Court docket until some 45 days later—on July 13.

In the meantime, on June 8 Klein had served USF & G with notice of an alternative motion:

1. under Fed.R.Civ.P. ("Rule") 59(e), to alter or amend the May 29 order to the extent it had found that improper conduct on Klein's part called for appointment of the Trustee, or

2. under Rule 59(a), for a partial new trial.

Klein's motion was filed in court June 17 and was heard and denied the same day by Judge DeWitt. That June 17 order of denial was docketed June 24 (actually *before* the docketing of the May 29 order that Klein had unsuccessfully sought to undo by his June 8 motion!).

On June 29 Klein filed this notice of appeal (copied verbatim):

> WAYNE J. KLEIN, DEBTOR, appeals to the District Court from the Order of Bankruptcy, Judge Susan P. DeWitt entered in this cause on June 17, 1987, which Order denied a Motion of Wayne J. Klein, to alter or amend the Order of May 29, 1987 so as to delete any reference to "fraud, dishonesty, incompetence or gross mismanagement."

On July 8 USF & G filed a conditional notice of cross-appeal objecting to the conversion from Chapter 7 to Chapter 11. There was no doubt of the conditional nature of USF & G's action, for its notice of cross-appeal expressly said it was effective only to the extent (if any) to which Klein's June 29 notice of appeal might be considered to have addressed the underlying May 29 order.

## Appellate Posture of the May 29 Order

Leaving aside any questions of timeliness, this Court finds Klein's appeal totally unavailing on the merits, however the notice of appeal is viewed as a procedural matter. Before turning to the appeal's substantive deficiencies, however, this opinion must pause to deal with just what the notice of appeal addresses.

By its plain language Klein's June 29 notice of appeal specifically and in terms challenges *only* Judge DeWitt's June 17 order denying the alteration or amendment of the May 29 order—it does *not* appeal from the May 29 order itself. Despite that clarity of language of the notice of appeal, Klein says in his supplemental memorandum filed October 5—now that this Court has enlightened him to the previously-unaddressed procedural questions (Supp.Mem. 2):

3. Klein's bankruptcy schedule (USF & G Ex. 22) represents himself to be "unemployed" and *not* engaged in business—it reflects that he had previously operated his own now-defunct corporations, Klein Construction Company and Klein Corporation. His only listed asset, apart from nominal personal effects and a computer that he represents has been pledged as security for debts greater than its value, is all the stock of Klein Industries. During Klein's deposition in the course of his Chapter 7 proceedings (USF & G Ex. 50), he said Klein Industries had no assets at all except for the corporate stock in the two corporations mentioned earlier in this footnote. He said Klein Corporation had no known assets, except "We might have good will and some intangible assets." As for Klein Construction Company, it is itself in Chapter 7 proceedings.

6. The Notice of Appeal of June 29, 1987 despite its language was intended to appeal that separate part of the Order of May 29, 1987 which appointed a trustee "for cause," because of alleged "fraud, dishonesty, incompetence or gross mismanagement." [4]

That kind of revisionist history just won't do. Bankruptcy Rule ("B.Rule") 8002(a) mandates the filing of a notice of appeal "within ten days of the date of the entry of the judgment, order, or decree appealed from." B.Rule 8002(b) creates a necessary exception to that mandate by stating that once a timely motion to alter or amend [5] or a timely motion for a new trial [6] has been filed, the time to appeal "shall run from the entry of the order denying a new trial or granting or denying any other such motion." B.Rule 8002(b) goes on to provide that a premature notice of appeal is ineffective: It says there must be a new notice of appeal filed *after* the motions have been disposed of.

*Stelpflug v. Federal Land Bank of St. Paul*, 790 F.2d 47, 49–50 (7th Cir.1986) (per curiam)—reconfirming a wealth of prior authority to the same effect—teaches the "entry of the judgment" for B.Rule 8002(a) purposes means the date of *docket* entry. In those terms Klein's June 29 notice of appeal was obviously timely as to the Bankruptcy Judge's June 17 order, which was docketed June 24. On that at least there is no dispute.

Had Klein intended (as B.Rule 8002(b) permitted) to take an appeal from *both* the May 29 and the June 17 orders, it would have been the easiest thing in the world for his counsel to say so in so many words. Klein and his counsel did not, and they are bound both by what they did and by what they did not do.[7]

One other point should be made in this respect. USF & G's cross-appeal, if nothing else, should have alerted Klein's counsel to the fact that he had failed to take an appeal from the May 29 order. Counsel for USF & G specifically made its July 8 cross-appeal conditional (obviously having recognized a potential problem of timeliness [8]). Thus put on notice, Klein's counsel had every opportunity to look at the docket and to discover for himself that a direct appeal

---

4. Klein's supplemental memorandum couples its lack of responsiveness to this Court's request for a reasoned statement of legal position (see n. 2) with a startling example of a total lack of both consistency and fairness—the term "chutzpah" has entered the English language precisely because it best characterizes the kind of position advanced by Klein. Though he wants the benefit of a retrospective rewriting of his own notice of appeal, he somehow finds it possible to assert (Supp.Mem. 3):

8. Klein further maintains that USF & G's so-called "Notice of Cross Appeal" was not a cross appeal at all because it appeals only from the separate part of the Order of May 29, 1987 which granted Klein's Motion to convert from Chapter 7 to Chapter 11. The Notice of "Cross Appeal" is therefore out of time and the cross appeal should be dismissed.

By contrast, USF & G has the grace to recognize that its cross-appeal must stand or fall with the treatment of Klein's appeal as either covering or not covering the May 29 order. Klein, on the other hand, asks the better of both worlds. As the balance of this opinion reflects, Klein deserves and gets the fate suggested by the stock-market aphorism: Bulls may make money; bears may make money; but hogs get slaughtered.

5. B.Rule 9023 makes Rule 59 applicable to bankruptcy proceedings. Rule 59(e) deals with motions to alter or amend, which must be filed within ten days after the entry of judgment.

6. Rule 59(b) (also applicable to bankruptcy proceedings via B. Rule 9023) requires motions for new trial to be filed within the same ten-day post-judgment-entry period as Rule 59(e) motions.

7. It is true that Klein's designation of the record on appeal initially referred just to the May 29 order and then, by handwritten interlineation, to the June 17 order too. But that just reflects sloppy lawyering—counsel's not having paid attention to what their own notice of appeal had said. It is really inappropriate to view the later designation of record as somehow retrospectively altering the unambiguous jurisdictional document: the notice of appeal itself.

8. Interestingly enough, as things turned out, the awareness of that problem on the part of USF & G's counsel did not lead him to do his own homework by checking the Bankruptcy Court docket. Had he done so, he would have discovered that the initial May 29 order had not yet been docketed and was therefore still separately appealable by either USF & G or Klein under *Stelpflug*. But he did not, "And that has made all the difference" (Frost, *The Road Not Taken*).

could *still* be taken from the May 29 order (remember that order was not docketed until July 13, so a timely notice of appeal could have been filed until July 27). It is black-letter law that counsel is responsible for taking steps to learn the state of the docket when it comes to determining the time for appeal (see, e.g., *Spika v. Village of Lombard,* 763 F.2d 282, 285–86 (7th Cir.1985) and numerous cases cited there). Hence there are really two reasons, not just one, for disallowing Klein's present lame effort to rewrite his appeal from what it was to something it was not.[9]

This Court is well aware of a few cases giving bankruptcy appellants the benefit of a rewrite of their notices of appeal under similar circumstances (see *In re Nicholson,* 779 F.2d 514, 515–16 (9th Cir.1985)). Though *Nicholson, id.* at 515 characterizes the opposite result as "harshly technical," technicality is after all implicit in the jurisdictional nature of notices of appeal. In a sense, it is always "harshly technical" to prevent an appellant from reaching the merits because of an untimely notice of appeal, but our Court of Appeals is strict in its adherence to that rule (viz. *Stelpflug* )— and properly so, in this Court's view. All the same, this opinion will later take a brief look at the propriety of the May 29 order (as well as the June 17 order) on its merits, against the possibility that if this Court's decision is appealed our Court of Appeals might relax its previously-announced standards.

■ Because Klein did not in fact appeal from the May 29 order, USF & G's conditional cross-appeal was ineffective. USF & G Appellate Brief ("App.Br.") 6–8, 15–16 (part of USF & G's final submission in response to this Court's request) is entirely candid on that score. This opinion will not, then, consider the propriety of the May 29 order's conversion of the case from Chapter 7 to Chapter 11 (though it will later touch briefly on one aspect related to that subject).

*Standard of Review on Klein's Appeal*

■ With that extended preliminary discussion out of the way, it is time to turn to another procedural question: the standard by which an order denying a post-judgment motion is to be tested. *Rothwell Cotton Co. v. Rosenthal & Co.,* 827 F.2d 246 (7th Cir.1987) is our Court of Appeals' most recent review of a motion for reconsideration denied by a lower court, and it applied an abuse-of-discretion standard of review (*id.* at 251). It quoted with approval this Court's opinion in *Keene Corp. v. International Fidelity Insurance Co.,* 561 F.Supp. 656, 665–66 (N.D.Ill.1982) (an opinion that had previously not only been affirmed by the Court of Appeals but was actually adopted by that Court, 736 F.2d 388, 393 (7th Cir.1984), which stressed the limited scope of motions for reconsideration.

Had Klein properly appealed from the May 29 order (as he did not), the appropriate standard of review would have been the different one stated by this Court in *In re Brauer,* Nos. 87 C 3092 and 3093, slip op. at 5–6 (N.D.Ill. Aug. 5, 1987):

1. ... [A] question of law ... is one this Court can review de novo (*In re Boomgarden,* 780 F.2d 657, 660 (7th Cir. 1985)).

2. [The Bankruptcy Judge's] findings of fact must be reviewed under a "clearly erroneous" standard (Rule 8013; *Boomgarden,* 780 F.2d at 660). Under that standard (*In re Riggsby,* 66 B.R. 329, 333 (N.D.Ill.1986)):

[A] reviewing court may not overturn a finding of fact unless it is left with a definite and firm conviction that the finding was a mistake.

Even were this Court to become convinced (as it has not) that it would have decided a factual issue differently from [the Bankruptcy Judge], it should not

---

**9.** This makes it unnecessary to decide whether an appeal taken prematurely (as would have been the case with a June 29 notice of appeal from an as-yet-undocketed May 29 order) becomes effective later—that is, ripens—upon the docketing of the order. In that respect, our

Court of Appeals' ruling in *Stelpflug* is sharply at odds with the cases that adopt a kind of springing-use approach to validate such a premature appeal (*In re Mike,* 796 F.2d 382, 384 (11th Cir.1986)).

substitute its judgment for his (*Anderson v. Bessemer City*, 470 U.S. 564, 573–74 [105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518] (1985)).

Out of an abundance of caution, this opinion will take that more restrictive perspective of Bankruptcy Judge DeWitt's decision—and Klein loses anyway.

*Correctness of the Bankruptcy Judge's Decision Under Any Standard of Review*

■ As USF & G App.Br. 11 correctly points out:

The debtor herein [Klein] raises a number of issues in the Rule 59 motion and the statement of issues for appeal that could have been averted if debtor presented a case against the Motion of USF & G to Appoint a Trustee.

Klein cannot complain, as he seeks to do, of Judge DeWitt's claimed error in appointing a Trustee at the same hearing at which Klein was allowed to convert from Chapter 7 to Chapter 11—that was clearly on the previously-announced agenda for the Bankruptcy Court hearing (see May 21, 1987 Tr. 42), and Klein had ample opportunity to prepare. Klein's counsel expressly declined to offer any evidence on the matter at the hearing (see May 27, 1987 Tr. 102). And for the same reason, Klein cannot complain of his purported lack of opportunity to present evidence on the same issue later—that is really a total mischaracterization of what happened.

■ Both in factual terms and in the legal sense, Bankruptcy Judge DeWitt appointed the Trustee immediately after Klein's Chapter 11 case was commenced via the conversion. That action by the Bankruptcy Judge comports literally with the statute, which provides (11 U.S.C. § 1104(a) (emphasis added)):

At any time after commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee—

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanage-

ment of the affairs of the debtor by current management, *either before or after the commencement of the case....*

Most importantly, the second emphasized portion of the statute makes it crystal clear that Klein cannot fairly complain of the Trustee's appointment having been made on the strength of the evidence presented at the same hearing that preceded and was the basis for the "commencement" of the Chapter 11 case—the conversion from Chapter 7 to Chapter 11. It was entirely sound for the Bankruptcy Judge to view the immediate appointment of a Trustee—the same one who had been acting in the Chapter 7 proceedings—as essential to avoid any renewal of the kind of depredations that had been represented by Klein's prior fraudulent conduct. That result could be assured only by avoiding any gap in the Trusteeship, and that in turn required the hearing sequence adopted by Bankruptcy Judge DeWitt.

■ After a detailed review of a number of ways in which Klein has played fast and loose with documents (both in and out of court), with property and with money, Bankruptcy Judge DeWitt concluded in her May 29 order:

The above history of Debtor's actions and dealings reveal several instances of fraud, dishonesty, incompetence, or gross mismanagement.

Whatever standard of review might be applied, that determination is clearly unassailable. This Court has reviewed all the evidence before Bankruptcy Judge DeWitt, and that evidence establishes overwhelmingly a consistent pattern of misrepresentations and omissions by Klein in his own Chapter 7 proceeding and in the contemporaneous Klein Construction Company Chapter 11 and Chapter 7 proceedings. It is unnecessary to prolong this opinion unduly to cite chapter and verse. Instead the portion of Judge DeWitt's May 29 order (pages 4–8) dealing with that subject and containing her conclusion is attached as Appendix A. It describes a number of instances of Klein's conduct that led the

Bankruptcy Judge to her decision, and it is more than amply supported by the record.[10]

In sum, any standard of review (even a totally impermissible one of de novo examination) would lead to the conclusion Bankruptcy Judge DeWitt was unquestionably correct in appointing the Trustee. Klein's appeal must be and is rejected.

## Conclusion

Klein's misconduct amply supports Bankruptcy Judge DeWitt's findings of "fraud, dishonesty, incompetence, or gross mismanagement" (really the most egregious of those—the first two) on Klein's part, and therefore supports the Bankruptcy Judge's consequent appointment of a Chapter 11 Trustee. A fortiori, Klein's appeal from the reconsideration of those determinations is ill-founded. As for USF & G, because Klein did not file an appeal from the Bankruptcy Judge's May 29 order, the contingent cross-appeal is ineffective and is therefore dismissed.[11]

## APPENDIX A

### [Page 4]

failed to file with the court the requisite operating statements after the filing of the petition. *See In re Paolino,* 60 B.R. 828, 829 (E.D.Pa.1986); *In re Deena Packaging Industries, Inc.,* 29 B.R. 705, 707 (Bkrtcy S.D.N.Y.1983). Likewise, a trustee was appointed when the debtor failed to make mortgage payments. *In re McCall,* 34 B.R. 68, 69 (Bkrtcy E.D.Pa.1983). In addition, trustees have been appointed for

cause when the debtors failed to file income tax returns or pay sales taxes. *See In re Diamond,* 49 B.R. 754, 758 (Bkrtcy S.D.N.Y.1985); *In re Great Northern Lumber & Millwork Corporation,* 20 B.R. 610, 611 (Bkrtcy E.D.Pa.1982).

Cause for the appointment of a trustee is also found in the present case. The history of this case contains several instances where cause exists in the nature of fraud, dishonesty, incompetence, or gross mismanagement. Debtor is the sole owner of 100% of the stock of Klein Industries, which in turn owns 100% of the stock of Klein Corporation and Klein Construction Company. Therefore, not only are Debtor's actions individually, but also his actions relating to Klein Construction Company, relevant in determining if cause exists. The history of Debtor's actions as owner of Klein Construction Company (KCC), while acting in the fiduciary capacity as Debtor-in-Possession pursuant to 11 U.S.C. § 1107, clearly mandates the appointment of a Chapter 11 trustee under section 1104(a)(1).

### [Page 5]

KCC filed its voluntary petition for relief under Chapter 11 on August 20, 1986. On January 5, 1987 this Court ordered that a Rule be entered against Debtor, as president of KCC, to Show Cause why he should not be held in contempt of court for failure to cause KCC to file its Schedules, Statement of Affairs, and Debtor-in-Possession Final Report within the time set in the Court's order dated December 22, 1986. On or about March 25, 1986 Debtor did file Schedules of Assets and Liabilities, a State-

---

**10.** Indeed, Bankruptcy Judge DeWitt's recitation of Klein's activity in an understated way does not disclose the full flavor that emerges from a detailed scrutiny of the record. That is of course understandable, because the Bankruptcy Judge had herself conducted the hearing and had the matters fresh in mind. Any more extensive particularization of Klein's activities might include such matters as his statement to Klein Construction Senior Project Manager Offutt, when Klein was about to divert over $500,000 in funds that had been paid to the corporation to take care of insurance premiums, "I'm going to take the money and run anyway"—followed by Klein's question "Can they put me in jail?" In a sense, it is a mistake to single out one item in that way, lest an impression be

created that the record does not contain more instances of Klein's misconduct (it does).

**11.** USF & G will have ample opportunity to argue before the Bankruptcy Court for dismissal of the Chapter 11 proceeding on any and all grounds—for example:

1. the absence of any viable business to reorganize (either on the part of Klein himself, the only debtor properly to be considered in the current proceeding, or Klein Corporation or Klein Construction); in that respect, see this Court's opinion in *In re Mandalay Shores Cooperative Housing Ass'n, Inc.,* 63 B.R. 842, 847–49 (N.D.Ill.1986); and

2. the very facts of Klein's prior misconduct.

ment of Financial Affairs, and a Summary of Receipts/Disbursements August 20, 1986–December 3, 1986. The above documents are part of USF & G Exhibit 26. In Schedule B–1 Debtor claimed that KCC had no interest in any real property. In Schedule B–3 Debtor claimed that no property had been transferred under assignment for the benefit of creditors, within 120 days prior to filing the petition. Under the Statement of Financial Affairs, Debtor claimed no income other than from the operation of business. After a Motion was filed by USF & G, this Court ordered Debtor to file supplements to the Schedule of Assets and Liabilities and the Statement of Financial Affairs and in addition to file a Debtor-in-Possession's Final Report on April 30, 1987.

In addition to documents filed as Debtor-in-Possession of KCC, Debtor filed a Statement of Financial Affairs for Debtor Not Engaged in Business in his individual bankruptcy case on May 6, 1987. (USF & G Exhibit 22). Debtor claimed no person held property

[Page 6]

in which he had an interest. He also claimed that he had made no transfers of property during the year preceding the filing of the petition.

On April 10, 1986 this Court entered an Order granting judgment on the pleadings on the Trustee's Complaint to Avoid Post-Petition Transfer in the KCC case. (USF & G Exhibit 3). The avoided transfer was one of $78,582.00 made to Debtor's neighbor, Jack Jepsen, nine days after filing Chapter 11. Debtor also transferred $568,238.00 which was received from Northeast Illinois Railroad Company, one day prior to the filing of KCC's petition which was not originally included in the Schedules. (USF & G Exhibit 5).

Debtor was a co-beneficiary of Trust Number 8987 dated March 13, 1986. (USF & G Exhibit 38). On or about October 23, 1986 Debtor assigned all of his interest in the trust to his co-beneficiary. (USF & G Exhibit 39).

Debtor was the sole beneficiary of Trust Number 1540 dated December 8, 1976. (USF & G Exhibit 33). On June 13, 1985 he amended the trust and named his wife, Donna Klein, as sole beneficiary. (USF & G Exhibit 34). On September 9, 1986 Donna Klein assigned 25% of her interest in Trust Number 1540 to Jack Jepsen. (USF & G Exhibit 35). On December 30, 1986 Donna Klein directed the Trust Department to send all documents relating to Trust Number 1540 to Debtor. (USF & G Exhibit 36).

[Page 7]

Debtor was also sole beneficiary of Trust Number 39723 dated July 18, 1979. (USF & G Exhibit 29). On January 6, 1986 the trustee's deed was granted to First Illinois Bank of LaGrange. (USF & G Exhibit 30). On February 5, 1987 First Illinois Bank of LaGrange was authorized to pay the net proceeds of a sale regarding Trust Number 39723 to Debtor (USF & G Exhibit 32).

In addition Debtor received annual income of $36,000 from 1984–1986 from Harlem Auto Parts, Inc. (USF & G Exhibit 42, 43, 44). Such income appears to be payment for the lease of property. However, no such property or the transfer of such property was listed in Debtor's Schedules.

On December 30, 1986 this Court ordered the appointment of an interim trustee in Debtor's individual case in order to preserve the assets of the estate and to prevent further loss to the estate. Notwithstanding the conversion to Chapter 11, a trustee is still necessary. Therefore, the Motion of USF & G to Appoint a Chapter 11 Trustee is also granted. Section 348(e) of Title 11 does provide that, "conversion of a case under section 706, 1112, 1307, or 1208 of this title terminates the service of any trustee or examiner that is serving in the case before such conversion." However, it has been determined that in some circumstances, even after conversion from Chapter 7 to Chapter 11, the interim trustee may continue serving until further order of the court is necessary to preserve the estate. *In re Seychelles*, 30 B.R. 75, 76 (Bkrtcy N.D.Texas 1983). The above history of

[Page 8]

Debtor's actions and dealings reveal several instances of fraud, dishonesty, incompetence, or gross mismanagement. As cause has been shown, a trustee will be appointed pursuant to section 1104(a)(1).

IT IS THEREFORE HEREBY ORDERED as follows:

A. The Motion of Wayne J. Klein to Convert to Chapter 11 is granted and the Chapter 7 case is converted to Chapter 11.

B. A Chapter 11 trustee will be appointed pursuant to 11 U.S.C. § 1104(a)(1), and the Chapter 7 trustee will continue to serve until the Chapter 11 trustee qualifies to serve. The Chapter 7 trustee will report her findings, conclusions, and recommendations regarding Debtor to the United States Trustee.

ENTER:
/s/ Susan Pierson DeWitt
United States Bankruptcy Judge

DATED: May 29, 1987