In re PETTIBONE CORPORATION, et al., a Delaware corporation, a/k/a Beardsley & Piper; Johnston & Jennings; Oceco; Pettibone Alabama; Pettibone Mercury; Barko Alabama; Barko Greenville; and f/k/a Magnum Industries; Pettibone Mulliken; Pettibone Georgia; Mercury Manufacturing; Pettibone Minnesota; Pettibone New York; Pettibone Wisconsin; Pettibone Westrac; National Iron Co.; Pettibone Compaction; Sure Seal Division, Barko Hydraulics, Inc., a Minnesota corporation, Pettibone Michigan Corporation, a Michigan corporation, Pettibone International Sales Corporation, a Delaware corporation, Pettibone Tiffin Corporation, an Ohio corporation, a/k/a and f/k/a Hanson Machinery Company, Pettibone Ohio Corporation, an Ohio corporation, a/k/a and f/k/a Cleveland Frog & Crossing Company, Pettibone Credit Corporation, a Delaware corporation, the Universal Engineering Corporation, an Iowa corporation, Pettibone Texas Corporation, a Texas corporation, Debtors.

No. 91 C 6700.

United States District Court, N.D. Illinois, E.D.

Sept. 28, 1992.

David E. Bennett, Jeanne Marie Hoffmann, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for Official Creditors' Committee of Products Liability and Personal Injury Claimants, appellant.

Kevin T. Keating, McDermott, Will & Emery, P.C., Chicago, Ill., for debtors.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

On August 30, 1991, the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "Bankruptcy Court"), entered a final order disallowing certain attorneys' fees and expenses sought by David E. Bennett ("Bennett") and Vedder, Price, Kaufman & Kammholz ("VPKK"), as Special Counsel to the PL Committee. The PL Committee itself now appeals that decision. For the reasons discussed below, the court dismisses the appeal for lack of jurisdiction.

## BACKGROUND

### A. The Bankruptcy and Plan of Reorganization

In 1986, Pettibone Corporation ("Pettibone") filed voluntary Chapter 11 petitions on behalf of itself and all of its U.S. subsidiaries. On December 9, 1988, the Bankruptcy Court entered an Order confirming the Debtors' Second Amended Consolidated Plan of Reorganization, as Modified (the "Plan").

At the time of Pettibone's filing, Pettibone had numerous outstanding products liability claims pending against it. The Plan designates the products liability claimants ("PL Claimants") as a separate class of creditors. Pettibone also had numerous layers of product liability insurance, including a self-insured retention, primary insurance coverage, and two or more layers of excess coverage. Pettibone's primary insurance carrier for several years, Northumberland General Insurance Company ("Northumberland"), was insolvent at the time Pettibone filed its Chapter 11 petition.

To resolve the problems created by the Northumberland insolvency (i.e., should the first layer excess carriers have to defend actions before the underlying Northumberland policy limits were exhausted?), Pettibone entered into agreements ("PL Insurance Agreements") with the first layer excess carriers ("PL Insurance Agreement Insurers"). The PL Insurance Agreement Insurers were obligated to defend and/or negotiate settlements for all products liability actions for the policy year, but were not obligated to make payments until the total amount of settlements and judgments reached the specified threshold.

Pursuant to the Plan, Pettibone assigned its rights and interests in all product liability insurance policies ("PL Insurance Policies") for which there was no PL Insurance Agreement to a Policy Assignee. The PL Committee (which consists of several of the attorneys representing individuals who have filed products liability claims against Pettibone) was designated in the Plan as the Policy Assignee.

The Plan gives the PL Committee, as Policy Assignee, the right to enforce the PL Insurance Policies for which there is no PL Insurance Agreement. The PL Litigation Fund was established to reimburse the PL Committee for certain attorneys' fees: specifically, allowed attorneys' fees relating to actions brought by the PL Committee to enforce PL Insurance Policies for which there is no PL Insurance Agreement.

### B. The Motion for Partial Allocation of Claims

During the 1983–84 Policy Year, Twin City Fire Insurance Company ("Twin City") was the first layer of excess insurance coverage. Accordingly, Twin City was obligated to defend and/or negotiate settlements for all products liability actions for the policy year, but was not obligated to make payments until the total amount of settlements and judgments reached the specified threshold ($1,970,327.40 for the 1983–84 policy year).

On April 2, 1990, the PL Committee and the PL Trustee filed a Motion to Allow Partial Allocation of Claims (the "Motion"). The Motion sought a finding that a partial settlement had been made and an equivalent amount of claim allowed for each timely-filed PL Claim in the 1983–84 policy period in the amount of $1,970,327.40 (the threshold level). Thus, the goal of the Motion was to obligate Twin City to start paying out on claims (something Twin City had previously refused to do).

The Plan gives Pettibone "the exclusive right and authority to take such action as it deems necessary to enforce each PL Insurance Agreement," such as the PL Insurance agreement with Twin City. If Pettibone fails to take action after being requested to do so by a PL Claimant, the Plan authorizes the claimant to proceed against the PL Insurance Agreement Insurer (*i.e.*, Twin City) at such claimant's own expense. Therefore, when Pettibone refused to make the Motion, individual PL Claimants had the right to proceed against Twin City.

Even though the PL Committee was not an individual PL Claimant, the Bankruptcy Court held that the PL Trustee and the PL Committee stood as surrogate to the interests of the individual claimants, and therefore held that the Motion need not be brought in the name of an individual claimant. Nevertheless, the Motion was ultimately denied on the grounds that it would have required a modification of the Plan after the Plan had been substantially consummated.

### C. *Bennett and VPKK's Application for Fees and Expenses*

VPKK and Bennett, as Special Litigation Counsel to the PL Committee, filed a fee application on May 7, 1991. In the application itself, they did not indicate the source from which they sought compensation. Subsequently, on August 6, 1991, they advised the Bankruptcy Court that they sought compensation *solely* from the PL Litigation Fund (which was established pursuant to Section 7.01(g) of the Plan). Section 7.01(g)(ii) describes those actions for which attorneys' fees may be compensated from the PL Litigation Fund:

> "Subject to Bankruptcy Court approval after notice and a hearing, the [PL Committee] may be reimbursed from the PL Litigation Fund Account for its reasonable fees and expenses incurred in enforcing (y) a PL Insurance Policy against a PL Insurer *other than an Agreement*

*PL Insurer* or (z) the Harbor Agreement . . ." (emphasis added).

The Bankruptcy Court held that while the fees and expenses requested were reasonable and well-documented, the unambiguous terms of the Plan did not allow Bennett and VPKK to be compensated for their fees relating to the Motion from the PL Litigation Fund. The PL Committee appeals this Order.

### DISCUSSION

#### A. *Jurisdiction*

■ In *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), the Supreme Court held that failure to specifically name an appellant in a notice of appeal deprives the appellate court of jurisdiction over the unnamed party. *Id.* at 317, 108 S.Ct. at 2409. The impact of *Torres* is clear according to the Seventh Circuit:

> "*Torres* changed the law in this circuit. It requires us to insist on punctilious, literal, and exact compliance with the requirement in Rule 3(c) [of the Federal Rules of Appellate Procedure] that the notice of appeal (or its functional equivalent, if but only if no notice of appeal is filed) 'shall specify the party or parties taking the appeal.'"

*Allen Archery, Inc. v. Precision Shooting Equipment, Inc.*, 857 F.2d 1176, 1177 (7th Cir.1988).

Because *Torres* only involved Fed. R.App.P. 3(c), the circuits have split on whether or not *Torres* should be applied to the analogous bankruptcy rule, Fed. R.Bkr.P. 8001(a). *See, Storage Technology Corp. v. U.S. District Court*, 934 F.2d 244, 247–248 (10th Cir.1991) (applying *Torres* to Fed.R.Bkr.P. 8001(a); *In re Memorial Estates, Inc.*, 1990 WL 37622, 1990 U.S.Dist. LEXIS 3439 (N.D.Ill. March 22, 1990) (applying *Torres* to Fed.R.Bkr.P. 8002); and *Matter of Case*, 937 F.2d 1014, 1020 (5th Cir.1991) (*Torres* not applicable to Fed. R.Bkr.P. 8001(a)).[1]

---

**1.** The Appellee's statement in its brief that "[*Torres'*] holding has consistently been applied to Federal Rule of Bankruptcy Procedure

8001(a)" is incorrect. (Appellee's brief at 11–12). The Fifth Circuit specifically stated, in an opinion dated August 9, 1991 that "the specifici-

Although the Seventh Circuit has strictly adhered to *Torres'* holding regarding specificity in notices of appeal, it has not addressed the applicability of *Torres* to Fed. R.Bkr.P. 8001(a). Accordingly, this court must do so.

Fed.R.Bkr.P. 8001(a) is an adaptation of Fed.R.App.P. 3(c), and it reads in part:

"The notice of appeal shall conform substantially to Official Form No. 35, *shall contain the names of all parties to the judgment, order or decree appealed from and the names, addresses and telephone numbers of their respective attorneys....*" (emphasis added).

In contrast, Fed.R.App.P. 3(c) states:

"The notice of appeal shall *specify the party or parties taking the appeal....* An appeal shall not be dismissed for informality of form or title of the notice of the appeal" (emphasis added).

Because Fed.R.Bkr.P. 8001(a) does not contain a provision excusing informalities, its requirements are actually stricter than those of Fed.R.App.P. 3(c). *Storage Technology*, 934 F.2d at 247.

Nevertheless, the Fifth Circuit held that *Torres* did not apply to Fed.R.Bkr.P. 8001(a). *Matter of Case*, 937 F.2d at 1020. In reaching its decision, the Fifth Circuit focused on the distinction between the word "contain" (used in Fed.R.Bkr.P. 8001(a)) and the word "specify" (used in Fed.R.App.P. 3(c)). *Id.* at 1021. *Case* involved an appeal of sanctions imposed on an attorney and his client jointly and severally. The notice of appeal listed the attorney as the client's attorney, but not as an appellant. *Id.* at 1020. As a result, the appellee argued that under *Torres*, "the attorney's failure to list himself as a party on the notice of appeal deprived the district court of jurisdiction to examine the award levied against him." *Id.*

The Fifth Circuit found otherwise on the grounds that Fed.R.Bkr.P. 8001(a) only requires that the notice of appeal "contain" the names of all parties and their attorneys. In contrast, Fed.R.App.P. 3(c) requires that "[t]he notice of appeal shall *specify* the party or parties taking the appeal" (underlining added). Thus, according to the Fifth Circuit, the parties had complied with Fed.R.Bkr.P. 8001(a), since the notice of appeal "contained" the attorney's name, even though the notice of appeal did not indicate that the attorney was an appellant.

This court does not find *Case* persuasive. First, *Case* effectively eliminates any specificity requirement in Fed.R.Bkr.P. 8001(a). Any person whose name happens to be "contained" somewhere in the notice of appeal (even an attorney hired strictly for the appeal) would be deemed to have satisfied Fed.R.Bkr.P. 8001(a).[2] Second, although the Fifth Circuit proclaims itself to have merely interpreted Fed.R.Bkr.P. 8001(a) by its "ordinary and plain meaning," the court actually contorts the rule's plain meaning to avoid a harsh result. Fed.R.Bkr.P. 8001(a) provides that the notice of appeal "shall contain the names of *all parties* to the judgment, order or decree appealed from *and* the names.... *of their respective attorneys....*" (emphasis added). By focusing exclusively on the term "contain", the court ignores the importance of the word "and", which separates the naming of the parties from the naming of the parties' attorneys. This separation clearly says that the parties (who

---

ty requirement set out in *Torres* is inapplicable to a notice of appeal from a bankruptcy court judgment or order." *Matter of Case*, 937 F.2d at 1020. Given that Appellee's brief was filed on January 3, 1992, and that Appellant's reply brief was filed on January 13, 1992, the failure of both sets of counsel to bring this case to the court's attention should be, at best, embarrassing to them. Moreover, Appellee's brief also contains another important citation error. Appellee's cite *Memorial Estates, Inc.* as specifically applying *Torres* to "Federal Rule of Bankruptcy Procedure 8001(a)." (Appellee's brief at 11–

12). Contrary to Appellee's assertion, *Memorial Estates, Inc.* only deals with Fed.R.Bkr.P. 8002 and 8001(c), and never once even mentions Fed. R.Bkr.P. 8001(a).

**2.** In a recent non-bankruptcy case involving an appeal from sanctions imposed on both a client and his attorneys, the Seventh Circuit held that the attorneys' failure to identify themselves in the notice of appeal deprived the court of jurisdiction over them. *Allison v. Ticor Title Ins. Co.,* 907 F.2d 645, 652–653 (7th Cir.1990).

are presumably the appellants) and their attorneys must be separately identified.

The mere fact that a narrow reading of Fed.R.Bkr.P. 8001(a) may have a harsh result is not an appropriate factor in the court's analysis. As the Supreme Court stated in *Torres:*

"We recognize that construing Rule 3(c) as a jurisdictional prerequisite leads to a harsh result in this case, but we are convinced the harshness of our construction is 'imposed by the legislature and not by the judicial process.'"

*Torres,* 487 U.S. at 318, 108 S.Ct. at 2409.

Contrary to the Fifth Circuit, the Tenth Circuit did apply *Torres* to Fed.R.Bkr.P. 8001(a):

"[E]ach and every appealing party must be specifically named in the notice of appeal or in a functionally equivalent document *properly listing the appealing parties* and filed within the appeal period" (emphasis added).

*Storage Technology,* 934 F.2d at 248.

Because the Tenth Circuit's analysis in *Storage Technology* more aptly and coherently describes the relationship between *Torres* and Fed.R.Bkr.P. 8001(a) than does the Fifth Circuit's analysis in *Case,* this court adopts *Storage Technology*'s holding.

■ In the case at bar, Bennett and VPKK are not mentioned in either the caption or the body of the notice of appeal. While VPKK's name does appear in the lower left hand corner of the notice (in the traditional spot where counsel for the appellant is identified), the notice of appeal unambiguously indicates that only the PL Committee is an appellant. Accordingly, the court finds that it has no jurisdiction over VPKK and Bennett since they were not specified as appellants in the notice of appeal.

The PL Committee nevertheless argues that "[w]here an attorney's right to recover fees and expenses stems from the client's authority to recover such fees, the client is the proper party to seek their recovery."[3] (PL Committee's reply brief at 1). In support of its position, the PL Committee cites a Title VII case which held that, "independent of his client, an attorney has no personal right to statutory attorneys' fees under 42 U.S.C. § 2000e–5(k)." *Soliman v. Ebasco Services Inc.,* 822 F.2d 320, 323 (2nd Cir.1987).

The PL Committee's argument ignores important distinctions between awards of attorneys' fees under Title VII and Chapter 11. The Title VII fee award provision (42 U.S.C. § 2000e–5(k)) states as follows:

"In any action or proceeding under this subchapter the court, in its discretion, may allow the *prevailing party . . . .* a reasonable attorney's fee" (emphasis added).

■ In contrast, 11 U.S.C. § 330, pursuant to which VPKK and Bennett made their fee application, states as follows:

"[T]he court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—(1) reasonable compensation. . . ."

Hence, unlike Title VII, under 11 U.S.C. § 330, attorneys have personal rights to statutory attorneys' fees. *See, e.g., In Re Leonard Jed Co.,* 118 B.R. 339 (Bkrtcy. D.Md.1990) (fee request made by counsel for a creditors committee); *In Re Pettibone Corp.,* 74 B.R. 293 (Bkrtcy.N.D.Ill. 1987) (fee request made by counsel for a creditors committee).

■ In the case at bar, the PL Committee was not a party to the fee petition. Moreover, the order appealed from applies only to the attorneys, Bennett and VPKK. Accordingly, the PL Committee is not the proper party to appeal the order. Since the court has already ruled that it has no jurisdiction over Bennett and VPKK, the appeal

---

**3.** As noted above in the "Background" discussion, the PL Committee consists of several of the attorneys representing individuals who have filed products liability claims against Pettibone. The PL Committee does not allege that it, as an entity, will have to pay the fees requested by VPKK and Bennett if the court disallows the requested reimbursement out of the PL Litigation Fund.

is dismissed.[4]

### B. *The Merits of The PL Committee's Appeal*

Even though the court has already dismissed the PL Committee's appeal due to a lack of jurisdiction, the court believes that the parties would also benefit from an analysis of the substance of the PL Committee's appeal.

As Pettibone pointed out in its brief, under the Plan, the PL Litigation Fund is available for paying fees and expenses only in certain types of actions:

"Subject to Bankruptcy Court approval after notice and a hearing, the Policy Assignee may be reimbursed from the PL Litigation Fund Account for its reasonable fees and expenses *incurred in enforcing* (1) *a PL Insurance Policy against a PL Insurer other than an Agreement PL Insurer* or (2) the Harbor Agreement solely in the event of the insolvency of an Agreement PL Insurer identified in the Harbor Agreement and Harbor's refusal to perform under the Harbor Agreement.

(R. 34, Plan, § 7.01(g)(ii)) (emphasis added).

The fee request in the case at bar relates to fees and expenses incurred in the PL Committee's attempt to enforce a PL Insurance Policy against Twin City, an Agreement PL Insurer. As quoted above, the Plan unambiguously precludes payment of such fees and expenses out of the PL Litigation Fund. Because the fee petition at issue sought compensation solely from the PL Litigation Fund, the Bankruptcy Court's denial of the fee request was appropriate.

### CONCLUSION

For all of the foregoing reasons, the court dismisses the appeal for lack of jurisdiction.

---

**4.** A notice of appeal may only be amended during the ten day time period for filing the original notice of appeal. *In re Memorial Estates, Inc.,* 1990 WL 37622, 1990 U.S.Dist. LEXIS 3439 (N.D.Ill. March 22, 1990). Therefore, the PL Committee may not now amend its Notice of Appeal to add the proper parties.