**UNOFFICIAL COMMITTEE OF ZERO COUPON NOTEHOLDERS,**
Plaintiff,

v.

**The GRAND UNION COMPANY, Bankers Trust Company, and Official Committee of Unsecured Creditors of the Grand Union Company, Defendants.**

Civ. A. No. 95–102–RRM.

United States District Court,
D. Delaware.

March 13, 1995.

---

Jeffrey C. Wisler, Barbara Snapp Danberg, Williams, Hershman & Wisler, P.A., Wilmington, DE, Peter D. Wolfson, P. Peyton Gibson and John A. Bicks, Marcus Montgomery Wolfson, P.C., New York City, for plaintiff Unofficial Committee of Zero Coupon Noteholders.

James L. Patton, Jr., Laura Davis Jones, S. David Peress, Young, Conaway, Stargatt & Taylor, Wilmington, DE, Barry N. Seidel and Roger D. Netzer, Willkie Farr & Gallagher, New York City, for defendant Grand Union Co.

Anthony W. Clark, Gregg M. Galardi, Skadden, Arps, Slate, Meagher & Flom, Wilmington, DE, John W. Butler, Jr. and J. Eric Ivester, Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, for defendant Bankers Trust Co.

David B. Stratton, Christopher J. Lamb, Pepper, Hamilton & Scheetz, Wilmington, DE, William F. McCarthy and Kendrick Chow, Ropes & Gray, Boston, MA, for defendant Official Committee of Unsecured Creditors of the Grand Union Co.

Thomas E. Ross, U.S. Trustee, Philadelphia, PA.

## MEMORANDUM OPINION

McKELVIE, District Judge.

This is a bankruptcy case. The Grand Union Company has filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Certain holders of zero coupon bonds issued by Grand Union's parent corporation have filed objections to Grand Union's motion for an order authorizing interim and final financing. The bankruptcy judge assigned to this case has entered an order striking the bondholders' motion, finding they lack standing as a party in interest to appear and be heard.

This is the court's decision on the bondholders' appeal from that order.

*FACTUAL BACKGROUND*

For the purpose of resolving this appeal, the court looks to the following facts as found by the bankruptcy court in its February 22, 1995, Supplement to Order Granting Motion to Strike and as they appear in the papers filed by the parties.

Grand Union is a Delaware corporation. It operates 237 supermarkets in seven states. It is a wholly owned subsidiary of Grand Union Capital Corporation, which is also a Delaware corporation. Grand Union Capital's sole significant asset is the capital stock of Grand Union. Grand Union Capital has three directors. Each of the three directors is also director of Grand Union. Two of the three directors are officers of both Grand Union Capital and Grand Union.

As a part of a 1992 recapitalization, Grand Union issued $350 million of 11.25% Senior Notes due in the year 2000, and $500 million of 12.25% Senior Subordinated Notes due in the year 2002. In addition, Grand Union's stock was pledged to secure its obligations under a Bank Credit Agreement and certain other obligations.

As a part of that recapitalization, Grand Union Capital issued $343 million of 15% unsecured Zero Coupon Notes due in the year 2004, and $745 million of 16.5% unsecured Subordinated Zero Coupon Notes due in the year 2007. Grand Union Capital issued the notes for an aggregate payment of approximately $200 million.

On January 25, 1995, Grand Union filed a voluntary petition in this court for relief under Chapter 11 of the Bankruptcy Code. On February 6, it filed a disclosure statement and proposed plan of reorganization that provides for the payment in full of some creditors' claims, for the cancellation of the Grand Union stock held by Grand Union Capital, and the issuance of 100% of Grand Union's new common stock in exchange for Grand Union's Senior Subordinated Notes. Grand Union estimates its obligations under those Senior Subordinated Notes is $565 million. It estimates the value of the new common stock to be approximately $190 million. Thus, the plan eliminates Grand Union Capital's equity interest in Grand Union and provides for no recovery by Grand Union Capital on account of that equity interest and no recovery by the holders of Grand Union Capital's zero coupon notes. The bankruptcy

court scheduled a hearing on Grand Union's plan for March 7, 1995.

Grand Union's petition was an event of default under the indentures for Grand Union Capital's zero coupon notes and on February 6, 1995, certain bondholders commenced an involuntary Chapter 11 case against Grand Union Capital in this district.

On February 8 and 10, an Unofficial Committee of Grand Union Capital's zero coupon bondholders filed objections in this case to Grand Union's motions for approval of proposed debtor-in-possession financing and proposed exit financing. The members of that Unofficial Committee hold nearly 70% of the face amount of the zero coupon notes and their investment in the notes would be wiped out under Grand Union's plan. They contend the plan is based on an agreement Grand Union had reached with its major creditors before filing the petition and is premised on a valuation of Grand Union which is substantially below what it is fairly worth. In fact, the Unofficial Committee contends the value is substantially below what Grand Union's own investment bankers had valued it at just prior to entering into bankruptcy.

On February 13, Grand Union moved to strike those objections and for an order protecting it from having to respond to discovery requests served by the Unofficial Committee. On February 16, the bankruptcy court heard argument on the motion to strike. On that same day, it entered an order granting the motion, finding the Unofficial Committee does not have standing in the case because it is not a "party in interest" under 11 U.S.C. § 1109(b). In that order, the bankruptcy judge reported he intended to file a supplement to the order with additional findings of fact and conclusions of law.

On February 17, the Unofficial Committee filed a notice of appeal from that order. On February 22, the bankruptcy judge issued the Supplement to Order Granting Motion to Strike. The parties have completed briefing on this appeal and this court heard argument on March 6, 1995.

## DISCUSSION

■ The bankruptcy court's order striking the Unofficial Committee's objections is based on a finding that the Unofficial Committee lacks standing to intervene in this case. As it is the equivalent of an order denying a motion to intervene, it is final and appealable under 28 U.S.C. § 158. *In re Amatex Corp.*, 755 F.2d 1034, 1040–41 (3d Cir.1985).

Section 1109(b) of the United States Bankruptcy Code identifies those persons who may appear and be heard in a chapter 11 case. It reads:

§ 1109  **Right to be heard**

> *      *      *      *      *      *

(b) A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or an indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

The Code does not include a definition of "a party in interest."

In *Amatex*, however, the Third Circuit defined "a party in interest" under § 1109(b) as one who "has a sufficient stake in the proceedings so as to require representation." 755 F.2d at 1042. The court indicated that this determination of a sufficient stake should be made on a case-by-case basis. *Id.*

In *Amatex*, the court found individuals who had been exposed to asbestos, and thus had the potential to contract asbestos-related diseases in the future and possibly sue for harms caused by those diseases, were sufficiently affected by the reorganization of an asbestos manufacturer to be entitled to a voice in the proceedings. *Id.* The court looked to a number of factors in making this finding. It noted, for example, that whether or not the individuals had claims that could be affected by a reorganization plan "in the technical bankruptcy sense," they clearly had "a practical stake in the outcome of the proceedings." *Id.* at 1041. The court further noted that none of the parties involved had interests similar to those of future claimants and, therefore, the claimants required their own spokesperson. *Id.* at 1043.

As this court interprets *Amatex*, to obtain an opportunity to appear and be heard, the bondholders need not show they are a creditor or equity holder of the debtor, or that they have some direct claim to Grand Union's assets. Rather, they need only show a sufficient stake to require representation.

In this case, the bankruptcy judge found the zero coupon noteholders did not have a sufficient stake in the proceeding as they are not creditors or shareholders of the debtor and have no direct economic stake in the case. Further, the bankruptcy judge found their interests were already adequately represented by Grand Union Capital. However, this court disagrees and finds that under the particular facts and circumstances of this case, the bondholders have identified a sufficient stake in the proceedings such that they have a right to be heard.

While it is correct that the zero coupon noteholders are not creditors or equity security holders of the debtor and that they do not have a direct claim to Grand Union's assets, it does appear that they have a practical stake in the outcome of these proceedings. That is, they would like to be repaid money loaned to Grand Union Capital, and under the plan currently on track in the bankruptcy court, they will, instead, be wiped out.

It may be that these bondholders will not be successful in showing Grand Union stock has sufficient value to modify the plan or sufficient value to suggest that the bonds have any value. Nevertheless, the court should be open to allow them to appear, raise these issues and have an opportunity to be heard on them. While that opportunity may add some time and expense to the litigation, it insures our courts are accessible to parties in interest who deserve an opportunity to appear and speak before the court grants relief. Furthermore, at oral argument, counsel for the Unofficial Committee identified specific and limited issues which the Committee seeks to address. This, in conjunction with the bankruptcy judge's authority to control proceedings before him will permit efficient resolution of this matter.

The bankruptcy judge also found that to the extent the zero coupon noteholders have an interest in this matter, Grand Union Capital will properly represent them. However, it is not so clear from the record that the interests of Grand Union Capital and these noteholders are similar. They have the relationship of debtor and creditor. As Grand Union Capital is an affiliate of Grand Union, and as they have common officers and directors, it appears that Grand Union Capital's interests may be more aligned with Grand Union than with the zero coupon noteholders. In that context, it may make more sense to allow the zero coupon noteholders an opportunity to appear and speak independently. That way the courts can work to assure that to the extent we recognize they have a right to be heard, they will, in fact, be heard.

*CONCLUSION*

For these reasons, the court will enter an Order reversing the bankruptcy court's Order Granting Motion to Strike and remand for further proceedings in accordance with this Memorandum Opinion.