In re PEACHTREE LANE ASSOCIATES, LTD., a Texas limited partnership, Debtor.

PEACHTREE LANE ASSOCIATES, LTD., a Texas limited partnership, Plaintiff/counterdefendant,

v.

Harry GRANADER, Alan Granader, and Daniel Granader, Defendants/counterplaintiffs.

Nos. 95 C 1198, 95 C 125.

United States District Court, N.D. Illinois, Eastern Division.

Nov. 7, 1995.

---

818

Jeffrey Wayne Finke, Thomas E. Raleigh, Drew Michael Dillworth, Christine M. Dekker, Raleigh and Helms, Chicago, IL, for Harry Granader, Alan Granader, Daniel Granader.

Mark P. Naughton, Jr., Rudnick & Wolfe, Chicago, IL, for Peachtree Lane Associates, Ltd., a Texas Limited Partnership.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Presently before the Court are the consolidated appeals, pursuant to 28 U.S.C. § 158(a), brought by Alan, Harry and Daniel Granader ("the Granaders" or "the defendants") of certain orders of the Bankruptcy Court in chapter 11 case number 94 B 14909 (*In re Peachtree Lane Associates, Ltd.*) and certain orders in the associated adversary proceeding, Bankruptcy Court case number 94 A 01468 (*Peachtree Lane Associates, Ltd. v. Granader*). The Granaders are the defendants-counterplaintiffs in the adversary proceeding as well as parties in interest to the bankruptcy case.[1] The debtor, Peachtree Lane Associates, Ltd. ("Peachtree") is the plaintiff-counterdefendant in the adversary proceeding. The Granaders appeal from the judgment order and permanent injunction entered in favor of Peachtree in the adversary proceeding, as well as the Bankruptcy Court's denial of the Granaders' motions for a stay pending appeal and to join the new buyer (of the debtor's property) as a party plaintiff in the adversary proceeding. With respect to the bankruptcy case, the Granaders appeal from (1) the order (Jan. 6, 1995) approving private sale of real property and limiting notice; (2) orders denying Granaders' motions (i) to stay the sale, (ii) to approve supersedeas bond, or, in the alternative (iii) to condition transfer of property on the outcome of appeal; and (3) the order (Nov. 30, 1994) confirming debtor's second amended liquidating plan of reorganization. The gravamen of the Granaders' appeal from the orders entered in the underlying bankruptcy case is that the Bankruptcy Court for the Northern District of Illinois was an improper venue for the bankruptcy case.[2] In their appeal of the Bankruptcy Court's orders in the adversary proceeding, the Granaders again assert a number of challenges to the Bankruptcy Court's jurisdiction to hear the action. Additionally, the Granaders assert error concerning a number of matters in the Bankruptcy Court's Judgment Order and Permanent Injunction.

---

1. The issue of when the Granaders became parties of interest is a matter of some contention *see infra*. However, there is no dispute that the Granaders became parties of interest as of the Bankruptcy Court's October 25, 1994 Order allowing their counterclaims in the adversary proceeding to stand as proofs of claim in the underlying bankruptcy case.

2. Indeed, in their appeal of the chapter 11 case, the Granaders only raise arguments addressed to the proper venue of that case. Accordingly, they have waived appeal as to any other issues in the chapter 11 case.

## BACKGROUND

On July 26, 1994, Peachtree filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Northern District of Illinois. Peachtree's primary business is owning, leasing, and operating its sole asset, an apartment complex located in Webster, Texas. Peachtree represents that it filed for bankruptcy protection to protect the apartment complex from a foreclosure proceeding commenced by Smith Barney, its largest secured creditor, which asserts a secured claim against the property of approximately $9,450,000. Peachtree is a Texas limited partnership. It has one general partner, Kemper/Cymrot Partners, Ltd ("Kemper/Cymrot"), which is also a Texas limited partnership, and one limited partner Allen Cymrot. Kemper/Cymrot's general partner is KILICO Realty Corporation, an Illinois corporation.

As both parties seem to agree, the bankruptcy case was relatively simple and straightforward; pursuant to the proposed reorganization plans, the apartment complex property was to be sold and all non-insider creditors were to be paid in full. *See* Second Am. Liquidating Plan of Reorganization at 1. There was, however, one adversary proceeding, which has given rise to a most litigious battle and which is the subject of one of the present appeals.

Peachtree filed its adversary proceeding against the Granaders on August 31, 1994. The Granaders own a shopping center in Webster, Texas that borders on a portion of Peachtree's apartment complex. The adversary proceeding involves a property dispute arising out of a certain easement agreement entered into between Peachtree's and the Granaders' predecessors in interest. The easement agreement grants the Granaders a non-exclusive private easement for ingress and egress for pedestrian and vehicular traffic along an access road which provides the sole means of ingress and egress to the apartment complex.

Peachtree contends that the Granaders' shopping center's parking lot includes parking slots and protrusions from landscaped islands that wrongfully encroach upon the access road in violation of the easement agreement. Peachtree further contends that this easement violation, allegedly constituting an unauthorized entry and trespass, obstructs its possession and ownership of the access road and precludes it from delivering free and unencumbered title to the property. Consequently, Peachtree filed the underlying adversary action seeking a declaratory judgment as to the parties' respective rights under the grant of easement and seeking to enjoin defendants from future encroachments. In response, on September 12, 1994, the Granaders filed a six-count counterclaim. Before describing the counterclaim, we pause to note a significant event in the course of the proceedings before the Bankruptcy Court: On October 25, 1994, the Bankruptcy Court issued a minute order, *inter alia*, granting the Granaders' "motion for enlargement of time with respect to bar date ... allowing defendants to and including September 12, 1994 to file their conditional counterclaim." Although it is not explicit from the face of the minute order, there is no dispute that the effect of the order was to permit the counterclaim to stand as a proof of claim against the estate in the bankruptcy proceedings.

The counterclaim sought a judgment of actual damages, punitive damages, and attorneys' fees for slander of title (count I), commercial disparagement (count V), and tortious interference with prospective economic advantage (count VI), and it sought actual damages and attorney's fees for breach of easement (count II), unjust enrichment (count III), and violation of the Texas Deceptive Trade Practices—Consumer Protection Act (IV).

The Granaders raised a number of challenges to the Bankruptcy Court's capacity to preside over the adversary proceeding including jurisdictional, venue, abstention, and right to jury trial challenges. The Bankruptcy Court denied the Granaders' various motions to dismiss, abstain, or transfer venue in oral rulings. Also, this Court denied the Granaders' motion for withdrawal of reference, holding that the Granaders do not have a right to a jury trial because, having submitted a proof of claim against the bankruptcy estate, the Granaders submitted themselves

to the equitable jurisdiction of the Bankruptcy Court. This Court also held that the adversary proceeding was a core proceeding. *See Peachtree Lane Assocs., Ltd. v. Granader,* 175 B.R. 232 (N.D.Ill.1994).

Trial of the adversary action was held in the Bankruptcy Court during November and December 1994. The Court issued an oral ruling on December 22, 1994 and entered its judgment order and permanent injunction on January 6, 1995. The Court entered judgment in favor of Peachtree on both Peachtree's complaint and the Granaders' counterclaims. To the extent necessary, the details of the Court's decision will be provided below. In brief, the Bankruptcy Court found that Peachtree owned the relevant parcel of land and that in 1992, the defendants installed 50 additional parking spaces, curbing and landscaping that encroach upon that parcel. Peachtree did not consent to that entry upon its land and it thus constituted an unlawful, continuing trespass upon the land. *See* 12/22/94 Tr. at 622–23 [3]; *see also* 1/6/95 Judgment Order & Permanent Injunction ("Judgment Order") ¶¶ C, D, H. The Bankruptcy Court further found that the 1982 grant of easement over the parcel was specifically a grant of easement for ingress and egress, not an easement for parking or other uses. 12/22/94 Tr. at 623–24; Judgment Order ¶ E. Because the easement was a specific use easement as opposed to a general easement, no right to construct parking spaces could be inferred or implied. 12/22/94 Tr. at 623–24. The Bankruptcy Court found that the Granaders had failed to meet their burden of establishing the numerous affirmative defenses that they asserted including: statute of limitations; laches, estoppel, acquiescence, waiver, "quasi-easement", easement by implication, easement by estoppel, adverse possession, and easement by prescription. 12/22/94 Tr. at 624–26; Judgment Order ¶ J. The equitable doctrines of unclean hands and *in pari delicto* were found to be unavailing to the Granaders. *Id.* With respect to the Granaders' counterclaim alleging breach of the easement agreement by Peachtree resulting from Peachtree's construction of a sign in the roadway, the Bankruptcy Court concluded that the sign was not constructed on the surface of the driveway, which would be prohibited by the easement, but rather the sign was on an island of landscaped area that divides the driveway. Also, the Court found that "there is no evidence about when the sign was constructed and therefore no basis for finding that it was constructed in violation of the grant of easements." 12/22/95 Tr. at 627; *see also* Judgment Order ¶ L(2). Judgment was also entered against the Granaders on their counterclaims of slander of title, unjust enrichment, violation of the Texas Deceptive Trade Practices—Consumer Protection Act, commercial disparagement, and tortious interference with prospective economic advantage. *See* Judgment Order ¶ L. The Bankruptcy Court entered a permanent injunction essentially prohibiting the defendants from using the subject parcel of land for any purposes other than pursuant to the easement agreement and directing the defendants to "restore ... the Debtor's property to the condition and configuration it was in as of August, 1992, prior to the installation of the 1992 improvements." *Id.* at 10. The Bankruptcy Court retained jurisdiction over the matter and the parties for purposes of enforcing the Judgment Order and Permanent Injunction and of awarding attorneys' fees to Peachtree if appropriate. *Id.* at 11.

Meanwhile in the underlying chapter 11 case, on January 5, 1995, the Bankruptcy Court entered an order confirming the debtor's second amended liquidating plan of reorganization dated November 30, 1994 (as modified December 21, 1994) and on January 6, 1995 entered an order approving the private sale of real property and limiting notice. A notice of appeal was timely filed on January 17, 1995. The following events in the bankruptcy case are of significance with respect to the present appeal. On October 5, 1994, the Bankruptcy Court denied the Granaders' motion to dismiss or transfer on jurisdiction, abstention and venue grounds ("the October 5 Order"). Among other things, the Bank-

---

**3.** The citation "12/22/94 Tr." refers to the transcript of the Bankruptcy Court's oral ruling on the amended adversary complaint and counterclaims issued on December 22, 1994. Unless otherwise indicated, citations of the form "month/day/year Tr." refer to transcripts of proceedings held before the Bankruptcy Court on the date indicated.

ruptcy Court concluded that the Granaders lacked standing to challenge the venue of the underlying bankruptcy case:

> I am going to deny the motion to transfer the underlying bankruptcy case to Texas. I don't believe that the movant here has standing as a party in interest. The movants' own papers indicate that the movants are not creditors of this estate. The contingent claims to attorney's fees I don't think confers standing in the sense of being a party-in-interest in a bankruptcy case.
>
> That claim arises in and will be resolved in the adversary proceeding and really is not affected one way or another by anything that happens in the bankruptcy case otherwise.

10/5/94 Tr. at 50. The Bankruptcy Court then upheld venue of the adversary proceeding in this District under 28 U.S.C. § 1409(a), which provides in pertinent part:

> Except as otherwise provided in [inapplicable subsections (b) and (d)], a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending.

*See* 10/5/94 Tr. at 64.

The Granaders' appeal of the underlying chapter 11 case again challenges the venue of that case in this district. The Granaders contend that they are parties in interest to the bankruptcy case under Rule 1014(a) of the Federal Rules of Bankruptcy Procedure and that venue for the chapter 11 case does not lie in the Northern District of Illinois. Further, the Granaders argue that all the orders entered against the Granaders must be reversed or vacated because venue was not proper here.

With the foregoing as a general roadmap, we now consider the Granaders' various arguments on appeal, filling in the details as necessary. When deciding an appeal from the Bankruptcy Court, we review questions of law *de novo* and we review the Bankruptcy Court's findings of fact for clear error. *In re Yonikus,* 996 F.2d 866 (7th Cir.1993). *See also* FED.R.BANKR.P. 8013.

## I. The Chapter 11 Appeal

Fundamentally, the Granaders challenge the chapter 11 bankruptcy case's venue in the Northern District of Illinois. In ruling that venue was proper in the Northern District, the Bankruptcy Court held that the Granaders were not "parties in interest" to the bankruptcy case. *See* 10/5/94 Tr. at 50. The Granaders challenge that determination, contending, *inter alia,* that they are "part[ies] in interest" as that term is used in the Bankruptcy Rules.

### The Granaders' Notice of Appeal

■ At the outset, we must pause to address a jurisdictional issue raised by Peachtree that challenges the propriety of the Granaders' appeal of the Bankruptcy Court's October 5, 1994 Order denying their motion to dismiss or transfer. The Granaders' amended notice of appeal states in pertinent part:

> An amended notice is hereby given that [the Granaders] defendants in adversary proceeding No. 94 A 01468, hereby appeal to the District Court from (a) the judgment order and permanent injunction ... entered in adversary proceeding No. 94 A 01468 on January 6, 1995, which granted judgment in favor of plaintiff on the adversary complaint and in favor of counterdefendant on each count of the counterclaim and decreed equitable relief in favor of plaintiff as well as all prior interlocutory orders entered in adversary proceeding No. 94 A 01468, (b) the order re stay pending appeal ... entered ... on January 6, 1995, and (c) or denying defendants' motion to join new buyer as party plaintiff in pending adversary proceeding ... entered ... on January 5, 1995.

Granaders' Amended Notice of Appeal at 1–2. The Granaders' original notice further stated:

> Notice is hereby given that [the Granaders] interested parties in chapter 11 case No. 94 B 14909, hereby appeal to the District Court from (a) order approving private sale of real property and limiting notice ... entered in chapter 11 case No. 94 B 14909 on January 6, 1995, (b) orders denying Granaders' motion (1) to stay sale of apartment complex, (2) to approve su-

persedeas bond, or, in the alternative, (3) to condition transfer of apartment complex to new owner on the outcome of the appeal of the adversary proceeding ... entered in chapter 11 case No. 94 B 14909 on January 5, 1995, and January 6, 1995, respectively, and (c) order confirming debtor's second amended liquidating plan of reorganization dated November 30, 1994 ... and order noting confirmation of plan of reorganization ... entered in chapter 11 case No. 94 B 14909 on January 5, 1995.

Granaders' Notice of Consolidated Appeals at 1–3.[4] Peachtree contends that the Granaders have forfeited their appeal of the October 5 Order by failing to specify that Order in their notice of appeal. We disagree. The Granaders' notice of appeal properly identifies the final judgments from which they appeal, namely, the orders approving sale of property and confirming the debtor's plan of reorganization (as well as the Bankruptcy Court's orders on the Granaders' collateral post-judgment motions). It is well established in this circuit that "when the appellant appeals the final judgment, that judgment necessarily incorporates all earlier interlocutory decisions" and "[b]y referring to the final order the [appellants] present the whole case to us on appeal." *Glass v. Dachel*, 2 F.3d 733, 738 (7th Cir.1993). *See also Badger Pharmacal, Inc. v. Colgate–Palmolive Co.*, 1 F.3d 621, 626 (7th Cir.1993) ("Ordinarily, an appeal from a final judgment brings up all previous orders entered in the case."); *Matter of Grabill Corp.*, 983 F.2d 773, 775 (7th Cir.1993) (holding that an appeal from an order denying a motion for reconsideration under Bankr.R. 8015 brings up for review all orders previously rendered by the court below); *Chaka v. Lane*, 894 F.2d 923, 925 (7th Cir.1990) ("Because the single final judgment incorporates earlier interlocutory decisions, any notice of appeal necessarily brings up the case...."); *Matter of Kilgus*, 811 F.2d 1112, 1115 (7th Cir.1987) ("An appeal from the final judgment brings up all antecedent issues.").

The cases cited by Peachtree are not persuasive authority to the contrary. *Leahy v. Bd. of Trustees of Community College Dist. No. 508*, 912 F.2d 917, 923 (7th Cir.1990), is accurately cited by Peachtree for the proposition that the specificity required by Fed.R.App.P. 3(c), which is roughly analogous to Fed.R.Bankr.P. 8001(a), "is a jurisdictional prerequisite." While this general proposition is unquestionably true, it has little bearing on this case because *Glass, Badger Pharmacal, Chaka* and the other cases cited above teach that the identification of a final order serves to identify all interlocutory orders for purposes of satisfying the Rule. Moreover, *Leahy* is inapposite on its facts insofar as it did not even involve an interlocutory order; instead, it involved the failure to specify that in addition to appealing the final judgment on the merits of the case, an appeal was also being taken from an order imposing sanctions. The Seventh Circuit held that the failure to identify the sanction order in the notice of appeal precluded its consideration, noting "[t]he decision on the merits and on the award of attorney's fees were separate judgments, from which separate appeals should have been filed." 912 F.2d at 923. That simply is not the case here. Nor does *In re Pettibone Corp.*, 145 B.R. 570 (N.D.Ill.1992), have any bearing on the instant case as that case addressed the failure to name a party to the appeal. *Id.* at 572–74. In that context, the Supreme Court has specifically instructed that the failure of a notice of appeal to name an appellant de-

---

4. Arguably, the filing of an amended notice of appeal rendered the original notice of consolidated appeal a nullity, in which case the Granaders arguably have not indicated an intent to appeal from the orders confirming the plan or authorizing sale. However, Peachtree does not argue this point, and in its response brief acknowledges that, "The Granaders' notice of appeal provided that they were appealing from the Sale Order, the Confirmation Order ..." Peachtree's Response Brief at 11. Peachtree's failure to argue that the Granaders' amended notice superseded the original notice waives the issue. Moreover, our review of all the pertinent papers submitted in connection with the Granaders' appeal and Peachtree's responses thereto, confirms that the Granaders intended to appeal from the final orders entered in the bankruptcy case (and all preceding interlocutory orders) and that Peachtree is not prejudiced by such a conclusion. Both parties have fully briefed all the pertinent issues and no party will be unfairly surprised by this Court's consideration of the Granaders' appeal of the Bankruptcy Court's chapter 11 venue determination. *See Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

prives the reviewing court of jurisdiction over the unnamed party. *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988). We do not confront that issue in the instant appeal. The last two cases cited by Peachtree are closer to the mark but we find them unpersuasive in view of Seventh Circuit authority. In *Klingman v. Levinson*, 66 B.R. 548 (N.D.Ill.1986), aff'd on other grounds, 831 F.2d 1292 (7th Cir. 1987)[5], the notice of appeal filed by the defendant identified the final order granting summary judgment in favor of the plaintiff in a dischargeability proceeding but did not identify a previous order dismissing the defendant's counterclaims. In a footnote, the court stated, "Because [defendant] did not indicate his intention to appeal the [order dismissing counterclaims] in his notice of appeal, this court is without jurisdiction to review that order under Bankruptcy Rules 8001 and 8002." *Id.* at 551 n. 1. The court failed to cite any authority for this conclusion; and, whatever the state of the law might have been in 1986, we believe it clear under the authority of cases such as *Glass, Badger Pharmacal,* and *Chaka* that interlocutory orders are brought within the scope of appeal by a notice identifying the final order in the case. Accordingly, we respectfully decline to follow *Klingman.* Nor do we find *In re Klein,* 79 B.R. 769 (N.D.Ill.1987), to be persuasive here. *In re Klein* actually presented a very anomalous factual situation which we need not detail here. Suffice it to say that in *Klein* the bankruptcy court entered an order on May 29, 1987, granting the debtor's motion to convert from an involuntary chapter 7 case to a chapter 11 case and granting a creditor's motion for appointment of the then-acting chapter 7 trustee as chapter 11 trustee. Unhappy with certain language in the order (suggesting improper conduct on part of the debtor), on June 17, 1987, the debtor moved under Fed.R.Civ.P. 59(e)

to alter or amend the order, or alternatively, for a partial new trial. The motion was denied the same day and an order to that effect was docketed June 24. On June 29, the debtor filed a notice of appeal identifying the June 17 order as the order appealed from. The district court held that the notice did not serve to appeal from the May 29 order because it did not identify that order.[6] To the extent that Peachtree relies on *Klein* for the general proposition that an interlocutory order must be specifically identified, we respectfully decline to follow it. As with *Klingman,* we do not believe the holding is consistent with the Seventh Circuit's statements that interlocutory orders are incorporated into the final order and that identifying the latter is sufficient to bring the former within the scope of review. Additionally, it is difficult, to say the least, to reconcile *Klein* with the Supreme Court's opinion in *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), which teaches that misidentification of the order appealed from generally does not deprive the reviewing court of jurisdiction where the order intended to be appealed from is evident and the other party is not prejudiced. *Foman,* like *Klein* involved a factual context in which the appellant identified an order denying a motion to amend judgment—as opposed to the earlier judgment—as the order appealed from. Following *Foman,* the Seventh Circuit generally treats flawed appeals from the denial of Rule 59 motions as appeals taken from the underlying judgment absent any prejudice to the other party. *See, e.g., Petru v. City of Berwyn,* 872 F.2d 1359, 1361–62 (7th Cir.1989); *Johnson v. University of Wisconsin—Milwaukee,* 783 F.2d 59, 61 (7th Cir.1986); *cf. Matter of Grabill Corp.,* 983 F.2d at 775 (involving an appeal from a motion to reconsider under Bankr.R. 8015, the bankruptcy counterpart to Fed.R.Civ.P. 59(e)). Therefore, we do not regard *Klein* as pertinent

---

5. In a footnote, the Seventh Circuit noted the district court's finding as to the notice of appeal; however, because the appellant did not contest the issue in his appeal to the Court of Appeals, the court did not address the issue. *Klingman,* 831 F.2d at 1293 n. 1.

6. The factual anomaly in the case derives from the fact that, for unexplained reasons, the May 29 order was not docketed until July 13, 1987, well after the notice of appeal was filed. Technically, a notice of appeal cannot be filed until judgment is entered, which for purposes of computing time is when the order is docketed.

authority in the instant case.[7]

Accordingly, we conclude that the Granaders' failure to specifically identify the October 5 Order does not render their notice of appeal deficient as to that Order and the Granaders may proceed with their appeal.

*The Granaders' Standing to Challenge Venue of the Chapter 11 Case*

■ This case presents a question of first impression: Whether a defendant in an adversary proceeding brought by a chapter 11 debtor-in-possession has "party in interest" standing to challenge the venue of the underlying bankruptcy.

Federal Rule of Bankruptcy Procedure 1014(a) provides:

(1) *Cases Filed in Proper District.* If a petition is filed in a proper district, on timely motion of a party in interest, and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, the case may be transferred to any other district if the court determines that transfer is in the interest of justice or for the convenience of the parties.

(2) *Cases Filed in Improper District.* If a petition is filed in an improper district, on timely motion of a party in interest and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, the case may be dismissed or transferred to any other district if the court determines that transfer is in the interest of justice or for the convenience of the parties.

FED.R.BANKR.P. 1014(a) (hereafter "Rule 1014"). Also, § 1109(b) of the Bankruptcy Code provides that "A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter [11]." 11 U.S.C. § 1109(b). Despite the fact that the term "party in interest" appears in well over 30 Bankruptcy Rules and over 40 sections of the Bankruptcy Code, neither the Code nor the Rules define the term. In *In re River Bend–Oxford Assocs.*, 114 B.R. 111 (Bankr.D.Md. 1990), the court observed:

This lack of precise definition was intentional. Congress' failure to define party in interest specifically was discussed by both Senator DeConcini and Representative Edwards during the proceedings preceding the enactment of the Bankruptcy Code of 1978. Senator DeConcini stated: "Rules of bankruptcy procedure or court decisions will determine who is a party in interest for the particular purposes of the provision in question." 124 Cong.Rec. S17407 (daily ed. Oct. 6, 1978); see *id.* at H11090 (daily ed. Sept. 28, 1979) (similar remarks of Rep. Edwards) as quoted in *In re Penn–Dixie Industries, Inc.*, 9 B.R. 936, 939 (S.D.N.Y. 1981).

*Id.* at 113.

■ Determining whether a given party is a "party in interest" is a recurring problem in the bankruptcy arena. The determination calls for a case by case analysis, *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir.1985), that takes into consideration, as Senator DeConcini put it, "the particular purposes of the provision in question." As one bankruptcy court has observed explicitly, "An entity may be [a] real party in interest and have standing in one respect while he may lack standing for another purpose." *In re Ofty Corp.*, 44 B.R. 479, 481 (Bankr.D.Del.1984); *see also In re River Bend–Oxford Assocs.*, 114 B.R. 111, 113 (Bankr.D.Md.1990) ("Party in interest is an expandable concept depending on the particular factual context in which it is applied.... [A] determination whether an entity qualifies as a party in interest should be made within the specific reorganization process context for which the determination is sought."). The determination also calls for a delicate balancing of competing consider-

---

7. Although *Klein* and *Klingman* provide Peachtree with a good faith basis for argument, this Court regards Peachtree's reliance on these cases without any mention, let alone discussion, of the numerous Seventh Circuit opinions discussed herein as disconcerting to say the least. Litigants and their counsel have a duty of candor to the Court, which includes addressing relevant authority. This Court firmly believes that litigation in the federal courts ought not devolve into a game of hide the ball.

ations. On the one hand, courts and commentators have recognized that the term should be broadly construed so as to allow all parties affected by a chapter 11 proceeding to be heard, *see, e.g., In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir.1985); *In re Wolf Creek Valley Metropolitan Dist. No. IV*, 138 B.R. 610, 615 (D.Colo.1992); *In re River Bend–Oxford Assocs.*, 114 B.R. 111, 116 (Bankr.D.Md.1990) ("the concept of party in interest under the Bankruptcy Code for purposes of participation in the reorganization process should be interpreted flexibly to insure fair representation of all significantly impacted constituencies"); *In re UNR Indus., Inc.*, 71 B.R. 467, 471 n. 9 (Bankr. N.D.Ill.1987); *In re Cash Currency Exchange, Inc.*, 37 B.R. 617, 628 n. 10 (N.D.Ill. 1984); *In re Int'l Oriental Rug Ctr., Inc.*, 165 B.R. 436, 439 (Bankr.N.D.Ill.1994); *In re Johns–Manville Corp.*, 36 B.R. 743, 754 (Bankr.S.D.N.Y.1984) ("[T]he concept of 'party in interest' is an elastic and broad one designed to give the Court great latitude to insure fair representation of all constituencies impacted in any significant way by a chapter 11 case."), *aff'd*, 52 B.R. 940 (S.D.N.Y.1985); 5 COLLIER ON BANKRUPTCY ¶ 1109.02, at 1109–27 (15th ed. 1994) ("COLLIER"); yet, as one court noted, "[o]verly lenient standards may potentially over-burden the reorganization process by allowing numerous parties to interject themselves into the case on every issue, thereby thwarting the goal of a speedy and efficient reorganization.... Granting peripheral parties status as parties in interest thwarts the traditional purpose of bankruptcy laws which is to provide reasonably expeditious rehabilitation of financially distressed debtors with a consequent distribution to creditors who have acted diligently." *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 850–51 (Bankr.S.D.N.Y.1989) (internal quotation marks omitted); *see also In re Public Service Co. of New Hampshire*, 88 B.R. 546, 554 (Bankr.D.N.H.1988) ("it is ... important that the court take care not to be so liberal in granting [party in interest and/or intervenor] applications as to over-burden the reorganization process by allow-ing numerous parties to interject themselves into the case on every issue, to the extent that the goal of a speedy and efficient reorganization is hampered.").

Perhaps as a consequence of the fact-specific and context-specific analysis that must be conducted when considering party in interest standing, the case law often seems inconsistent and certainly does not provide any simple answers to the question presently before the Court. The only thing that is clear is that § 1109(b)'s enumeration of parties in interest is not exhaustive. The Code makes explicit that the word "including" is not a limiting term as used in the Code. 11 U.S.C. § 102(3) ("In this title— .... (3) 'includes' and 'including' are not limiting"). In the absence of clear definitions, courts are left with open-ended formulations to guide them when determining party in interest standing. The Third Circuit's statement of the pertinent inquiry in *Amatex Corp.* is both frequently cited and representative of the open-ended nature of the inquiry: "[C]ourts must determine on a case by case basis whether the prospective party in interest has a sufficient stake in the proceeding so as to require representation." 755 F.2d at 1042; *see also In re Kaiser Steel Corp.*, 998 F.2d 783, 788 (10th Cir.1993) (quoting *Amatex*); *Unofficial Committee of Zero Coupon Noteholders v. Grand Union Co.*, 179 B.R. 56, 58–59 (D.Del.1995) (quoting *Amatex*); *In re Wolf Creek Valley Metropolitan Dist. No. IV*, 138 B.R. 610, 615 (D.Colo.1992) ("The critical test is whether the prospective party has a 'sufficient stake in the proceeding so as to require representation.' ") (quoting *Amatex*). Unfortunately, courts have not attempted to formulate any general analysis of what constitutes the requisite stake.[8] Our own Court of Appeals has read § 1109(b) as follows:

> We think all the section means is that anyone who has a legally protected interest that could be affected by a bankruptcy proceeding is entitled to assert that interest with respect to any issue to which it pertains, thus making explicit what is implicit in an *in rem* proceeding—that every-

---

8. Instead, courts appear implicitly to employ the equivalent of Justice Stewart's comment on the definition of pornography—they know a suffi-cient stake when they see it. *See Jacobellis v. Ohio*, 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793 (1964) (Stewart, J., concurring).

one with a claim to the *res* has a right to be heard before the *res* is disposed of since that disposition will extinguish all such claims. *Matter of James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir.1992).

The Granaders' "stake" in the underlying chapter 11 case is clear: If venue of the underlying chapter 11 is proper in the Northern District of Illinois, then, under 28 U.S.C. § 1409(a), venue of the adversary proceeding in this district is also proper; and, in order to succeed in having the adversary proceeding transferred to a different forum they will have to overcome the presumption that the district in which the underlying bankruptcy case is pending is the appropriate district for an adversary proceeding. *See In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1391 (2d Cir.1990). Thus, the Granaders' unquestionable stake in the proper venue of the adversary proceeding is inextricably intertwined with the issue of the proper venue for the underlying bankruptcy case. The Granaders could only effectively challenge venue of the adversary proceeding by challenging the venue of the bankruptcy case. We must ask then, whether the Granaders' interest in not having to defend the adversary proceeding in a potentially improper forum constitutes a sufficient stake or a legally protectible interest entitling them to be heard on the issue of the venue of the bankruptcy case. We conclude that it is.

In concluding otherwise, the Bankruptcy Court placed some weight on the fact that the Granaders were not creditors of the debtor at the time they challenged the venue of the chapter 11 case. *See* 10/5/94 Tr. at 50 ("I am going to deny the motion to transfer the underlying bankruptcy case to Texas. I don't believe that the movant here has standing as a party in interest. The movants' own papers indicate that the movants are not creditors of this estate."). Several opinions have stated that in order to have party in interest standing the party must have some interest in the distribution from the estate. *See, e.g., In re Comcoach Corp.*, 698 F.2d 571, 573 (2d Cir.1983) ("Bankruptcy courts were established to provide a forum where creditors and debtors could settle their disputes and thereby effectuate the objectives of the statute. Necessarily, therefore, the [party] must be either a creditor or a debtor to invoke the court's jurisdiction"); *In re Ionosphere Clubs, Inc.*, 101 B.R. at 849 ("the party requesting standing must either be a creditor of a debtor to invoke the court's jurisdiction or be able to assert an equitable claim against the estate"). However, others have rejected this view. *See, e.g., In re UNR Indus., Inc.*, 71 B.R. 467, 471 (Bankr.N.D.Ill. 1987) ("The gist of section 1109 is clear. The right to participate in Chapter 11 cases is not limited to creditors and owners. Persons who are not creditors but nevertheless have demonstrated a sufficient stake in the outcome of the case may be deemed to be parties in interest and be entitled to be heard."); *Unofficial Committee of Zero Coupon Noteholders v. Grand Union Co.*, 179 B.R. at 59 (construing *In re Amatex* and concluding "to obtain an opportunity to appear and be heard, the bondholders need not show they are a creditor or equity holder of the debtor, or that they have some direct claim to Grand Union's assets. Rather, they need only show a sufficient stake to require representation.") *In re Public Service Co. of N.H.*, 88 B.R. at 555 (granting party in interest status to the non-creditor State of New Hampshire and noting "[n]o square holding by any court has been cited that stands for the proposition that a 'non-creditor' or 'non-stockholder' entity is not qualified for a party in interest status under § 1109 of the Bankruptcy Code ..."); *In re Wolf Creek Valley Metropolitan Dist. No. IV*, 138 B.R. at 616 ("The authorities recognize that § 1109(b) can be extended when vital interests are at stake, nor has Emblem cited any case that stands for the proposition that a 'non-creditor' or 'non-stockholder' entity never has party in interest status under § 1109 of the Bankruptcy Code. It appears that this conclusion would in any case be incorrect."). Additionally, we note that several opinions have indicated that a "practical stake" in the underlying bankruptcy case may be sufficient to justify party in interest standing. *See In re Amatex Corp.*, 755 F.2d at 1041 (holding that potential claimants—individuals exposed to asbestos but not manifesting symptoms—had a practical stake in the reorganization of

asbestos manufacturer entitling them to party in interest standing and a voice in the reorganization proceedings); *Unofficial Committee of Zero Coupon Noteholders v. Grand Union Co.*, 179 B.R. at 59 (conferring party in interest standing to noncreditors in light of their practical stake in the outcome of the proceedings).

This Court is of the opinion that the proper answer to the question "May a noncreditor qualify for party in interest standing?" is dependant on the purpose for which party in interest standing is sought. Virtually every case discussing party in interest standing that has been cited to the Court, as well as those the Court has reviewed on its own efforts, have involved contexts that lie at the heart of the reorganization process, such as standing to sponsor or object to a plan of reorganization, *In re Wolf Creek Valley Metropolitan Dist. No. IV*, 138 B.R. 610 (D.Colo.1992); *In re River Bend–Oxford Assocs.*, 114 B.R. 111 (Bankr.D.Md. 1990); *Matter of Johns–Manville Corp.*, 68 B.R. 618 (Bankr.S.D.N.Y.1986); standing to modify the automatic stay *Matter of James Wilson Assocs.*, 965 F.2d 160 (7th Cir.1992), standing for an order authorizing interim and final financing, *Unofficial Committee of Zero Coupon Noteholders v. Grand Union Co.*, 179 B.R. 56 (D.Del.1995); standing to challenge a proposed settlement and compromise of claim, *In re Delta Underground Storage Co.*, 165 B.R. 596 (Bankr.S.D.Miss.1994). In such contexts, it is entirely sensible, when considering party in interest status, to inquire as to whether the proposed party in interest is a creditor or has some other pecuniary stake in the outcome of the reorganization. However, here, we are dealing with an entirely different context—one that does not involve the process of reorganization *per se* (that is, the process of allowing or disallowing claims, of collecting and apportioning the debtor's assets, etc.); instead, the context in which we are asked to consider party in interest status is a motion challenging the venue of the bankruptcy case. As this case illustrates, the determination as to the proper venue of the underlying bankruptcy case is one that has ramifications that extend beyond those, such as creditors who have a direct pecuniary stake in the outcome of the reorganization process. It has very real practical consequences for those who may be dragged into the bankruptcy process through adversary proceedings. This Court believes that fundamental fairness requires that those who have a practical stake in the proceedings be afforded an opportunity to be heard on the issues that affect them.

The only opinion that is at all analogous to the instant case—indeed, it is quite analogous—reached the same conclusion. In *In re FRG, Inc.*, 107 B.R. 461 (Bankr.S.D.N.Y. 1989), a "tag-along creditor" (that is, a creditor of a debtor whose chapter 11 case was filed in the Southern District of New York because it was related to an earlier filed related case in that District) moved to transfer all of the jointly administered cases to the Eastern District of Pennsylvania.[9] The debtors objected to the motion contending that, with respect to the earlier filed case, the tag-along creditor was not a party in interest under Rule 1014(a)(2) and hence lacked standing to challenge the venue of that case. Because the tag-along creditor had no standing to challenge the venue of the earlier filed case, the debtors argued that the motion to transfer must be denied because venue of the subsequently filed case was proper in the district where the earlier filed case was pending. Overruling the debtors' objections, the court held that "a tag-along creditor is able, under Rule 1014(a)(2), to make a venue motion with respect to the related prior proceeding." *Id.* at 467. The court reasoned that the tag-along creditor "clearly has a direct stake in the venue of the three cases in which he is a creditor. Because these case[s] were filed here by virtue of the presence of the [first filed] case ... that stake gives him a direct interest in the proper venue of the [first filed] case." *Id.* The court further observed:

9. There were actually six consolidated bankruptcy cases involved in *FRG, Inc.* and the tag-along creditor was a creditor in three of those cases—but not in the earliest filed case; however, unless the context requires otherwise, for ease of exposition we shall disregard this fact as it is inconsequential for our purposes.

Nothing in Rule 1014(a)(2) nor the Advisory Committee notes for 1983 and 1987 indicates the slightest inclination to define the parties who could make a venue motion so to exclude the exertion [sic] of an interest of a creditor of a tag-along debtor that there be proper venue of the case to which the case of the tag along debtor is related. Indeed, the rule was amended in 1987 to preclude, on the making of a timely motion to change venue, the retention of bankruptcy cases in the wrong venue. That change strongly indicates a concern for proper venue, an intention that timely motions be recognized and a desire that improperly filed cases be transferred if such a motion is made. Recognizing the standing of creditors to a tag-along case to challenge in timely fashion under 28 U.S.C. § 1408(1) the proper venue of the prior case, the pendency of which is asserted as the basis for venue under section 1408(2), fully accords with that intention.

*Id.* at 468.

We concur with the conclusion reached in *FRG, Inc.,* and find the same conclusion warranted in the instant case. The Granaders clearly have a legally protectible interest in the venue of the adversary proceeding in which they are defendants. That interest, in turn, gives them an direct interest in the proper venue of the underlying chapter 11 case, the pendency of which is asserted as the basis for venue of the adversary proceeding under 28 U.S.C. § 1409(a). Accordingly, we conclude that the Granaders had party in interest standing to challenge the venue of Peachtree's chapter 11 case and the Bankruptcy Court erred in finding that they lacked standing. In view of this determination, we need not consider Peachtree's argument that the Granaders waived the venue issue by not pressing it after the Bankruptcy Court allowed their counterclaim to stand as a proof of claim, thereby making the Granaders creditors—hence parties in interest—with standing to object to venue.

*Mootness of the Granaders' Appeal*

■ As yet another ground for having this Court avoid a ruling on the merits, Peachtree argues that the Granaders' appeal is moot because the Bankruptcy Court has confirmed the plan of reorganization and "[t]he property is about to be sold." *See* Peachtree's Response Brief (in 95 C 1198) at 15. Peachtree also emphasizes the fact that the Granaders did not obtain a stay of the Plan's consummation or the transfer of property. *Id.* For the reasons that follow, we conclude that the Granaders' appeals are not moot. We are, of course, cognizant of Seventh Circuit statements such as that in *Matter of Andy Frain Servs., Inc.:*

> Section 363(m) requires that the party appealing an order approving a sale of property to a good faith purchaser obtain a stay of the sale pending appeal. Fed. R.Bankr.P. 8005 generally requires the appellant to post a bond or other security to cover any loss to the purchaser caused by the delay of an appeal should the appeal prove successful. Such a procedure is, of course, essential in bankruptcy cases, for without such protection for good faith purchasers, few, if any, persons would participate in federal bankruptcy sales. Therefore, our circuit has consistently held that a would-be appellant's failure to obtain a stay of a sale to a good faith purchaser renders an appeal from the order authorizing and confirming the sale moot. *See In re Vetter Corporation,* 724 F.2d 52, 56 (7th Cir.1983).

798 F.2d 1113, 1125 (7th Cir.1986). In *Vetter Corp.,* the court explained:

> In the case of a bankruptcy sale, the failure to obtain a stay of the sale, pending appeal, allows the sale to be completed, thus preventing an appellate court from granting relief and thereby rendering the appeal moot. This rule "is in furtherance of the policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely." 14 Collier on Bankruptcy 11–62.03 at 11–62–11 (14th ed. 1977). Accordingly, we hold that pursuant to 11 U.S.C. § 363(m) (1982), if a party appeals a bankruptcy judge's order, authorizing and confirming a sale to a good faith purchaser, the order must be stayed pending ap-

peal, otherwise the issue becomes moot on appeal.

724 F.2d 52, 55–56 (7th Cir.1983).

■ On the surface, language such as this plainly supports Peachtree's contention that because the Granaders failed to obtain a stay their appeal is moot. Of course, the Granaders sought a stay in this case and their attempts to obtain a stay and post a supersedeas bond were denied by the Bankruptcy Court. There is no indication in either *Matter of Andy Frain Servs.* or *In re Vetter Corp.* that the appellant ever sought a stay. Indeed, we are aware of no case in which this mootness issue was presented under circumstances wherein the appellant sought a stay but was denied relief by the bankruptcy court. Of course, the practical considerations underlying the general rule are unaffected by whether or not the appellant sought a stay and was denied relief or never sought a stay in the first place: Absent a stay, events may occur which may render "it impossible for the appellate court to grant any relief or renders a decision unnecessary." *In re Vetter Corp.,* 724 F.2d at 55 (quoting *Country Fairways, Inc. v. Mottaz,* 539 F.2d 637, 641 (7th Cir.1976)). Yet, to apply the rule mechanically where an appellant has sought a stay but was denied relief would provide a mechanism by which bankruptcy courts could effectively preclude appellate review. This can not be the result envisioned by the Seventh Circuit. *Cf. Matter of Statistical Tabulating Corp.,* 60 F.3d 1286, 1289 (7th Cir.1995) (discussing the effect of dismissal of the underlying bankruptcy case on separate but related pending issues on appeal and noting that Congress could not have intended for bankruptcy courts to be capable of avoiding appellate review of those separate issues "simply by disbursing the estate's assets and dismissing the case.")

Most importantly, this Court does not believe that the considerations underlying the rule articulated in *Matter of Andy Frain Servs.* and *In re Vetter Corp.* (to name just two) are implicated here. Nothing that has happened to date in this case renders this Court incapable of granting relief to the Gra-

naders—if appropriate. *Matter of Andreuccetti,* 975 F.2d 413 (7th Cir.1992), teaches:

[W]hen determining whether an appeal has been rendered moot, "the reviewing court must 'scrutinize each individual claim, testing the feasibility of granting relief against the potential impact on the reorganization scheme as a whole.'" *In re Public Service Co. of New Hampshire,* 963 F.2d 469, 473 (1st Cir.1992) (quoting [*In re*] *AOV Indus., Inc.,* 792 F.2d [1140] at 1148 [(C.A.D.C.1986)]), *cert. denied,* ___ U.S. ___, 113 S.Ct. 304, 121 L.Ed.2d 226 (1992). That is, "[t]he court should reach a determination upon close consideration of the relief sought in light of the facts of the particular case." [*Central States, Etc. v.*] *Central Transport,* 841 F.2d [92] at 96 [(4th Cir.1988)]; *see also In re Texaco, Inc.,* 92 B.R. 38, 46–47 (S.D.N.Y.1988).

*Id.* at 418. In the instant case, we find that the relief sought by the Granaders in light of the facts of the case does not support a determination that this appeal is moot. First, as we noted above, the Granaders diligently sought a stay from the Bankruptcy Court and also brought an emergency motion to the district court for a stay. Prior to transferring this case to this Court's calendar, Judge Shadur denied the emergency motion for a stay. *See* 1/12/95 Tr. at 14. Second, we note that from the papers submitted to this Court it does not appear that the property has yet been sold. Instead, Peachtree informs us that the "[t]he property is about to be sold." Peachtree's Response Brief at 15. Finally, we conclude that the confirmation of the plan and the approval of the sale by the Bankruptcy Court do not render this Court incapable of providing relief to the Granaders with respect to their appeal of the adversary proceeding. The Bankruptcy Court determined the property interests of Peachtree and the Granaders with respect to the easement parcel. Peachtree's buyer will take whatever interests Peachtree had in its property. If, on appeal or on an appropriate remand, a court determines that Peachtree's interests in the subject property were different than as was determined by the Bankruptcy Court, then Peachtree's buyer will take (or will have taken) only that which the court determines

Peachtree's interests to have been. As the Supreme Court noted in *Golden State Bottling Co. v. National Labor Relations Bd.*, 414 U.S. 168, 179, 94 S.Ct. 414, 422–23, 38 L.Ed.2d 388 (1973): "Persons acquiring an interest in property that is subject to litigation are bound by or entitled to the benefit of, a subsequent judgment, despite lack of knowledge."

*Venue of the Chapter 11 Case*

■ As the party challenging venue of the bankruptcy case, the Granaders have the burden or proving by a preponderance of the evidence that venue is not proper. *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1391 (2d Cir.1990); *In the Matter of Emerson Radio Corp.*, 173 B.R. 490, 494 (D.N.J. 1994); *Lipshie v. AM Cable TV Indus., Inc. (In re Geauga Trenching Corp.)*, 110 B.R. 638, 650 (E.D.N.Y.1990); *see also* 1 R.E. Ginsberg and R.D. Martin, BANKRUPTCY: TEXT, STATUTES, RULES § 1.05[d], at 1–11– (3d ed. 1994). Peachtree's arguments to the contrary notwithstanding, we do not find that the Granaders waived their venue arguments by failing to reassert them after the Bankruptcy Court allowed their counterclaim to stand as a proof of claim; as we have already determined, the Granaders had party in interest standing to challenge venue of the underlying bankruptcy at the time that they did.

28 U.S.C. § 1408 provides in pertinent part that "a case under title 11 may be commenced in the district court for the district in which the domicile, residence, principal place of business in the United States, or principal assets of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement." 28 U.S.C. § 1408(1). As COLLIER notes, since it is problematic to say that a partnership has a residence or domicile, "the only meaningful venue test with respect to a partnership may be the district in which it has its principal place of business or its principal assets in the United States." 1 COLLIER ¶ 3.02, at 3–126

(15th ed. 1994); *see also In re Washington, Perito & Dubuc*, 154 B.R. 853 (Bankr. S.D.N.Y.1993); *In re Suzanne de Lyon, Inc.*, 125 B.R. 863, 867 (Bankr.S.D.N.Y.1991).

■ In determining the principal place of business of a partnership or corporation, courts have routinely looked to where significant business decisions are made, sometimes described as the debtor's "nerve center." *See, e.g., In re Washington, Perito & Dubuc*, 154 B.R. at 859; *In re Suzanne de Lyon, Inc.*, 125 B.R. at 867; *In re Garden Manor Assocs., L.P.*, 99 B.R. 551 (Bankr.S.D.N.Y. 1988); *In re Willows Ltd. Partnership*, 87 B.R. 684, 685 (Bankr.S.D.Ala.1988); *In re 1606 New Hampshire Ave. Assocs.*, 85 B.R. 298, 303 (Bankr.E.D.Pa.1988); *but see In re Great Lakes Hotel Assocs.*, 154 B.R. 667, 672 (E.D.Va.1992) (noting that the "nerve center" determination "does not de facto resolve the question of 'principal place of business'") And, the "business decisions" test is applicable regardless of the location of the debtor's assets. *In re Washington, Perito & Dubuc*, 154 B.R. at 859; *In re Suzanne de Lyon, Inc.*, 125 B.R. at 867; *In re Willows Ltd. Partnership*, 87 B.R. at 685.

■ Peachtree plainly seeks to base the conclusion that venue is proper in the Northern District of Illinois on the proposition that its business decisions are made in this district. *See* Peachtree's Response Brief at 21. However, this Court's review of the record from the Bankruptcy Court reveals that no evidence on this point was ever introduced below. At most, Peachtree points to its own counsel's assertion during the course of the Bankruptcy Court proceedings that "I don't think that there can be any doubt that the nerve center, the principal place of business of this Chapter 11 debtor is in Chicago. It is Kemper. It is LaSalle Street or Long Grove. It is in the Northern District of Illinois. . . . We have a witness prepared to testify as to the principal place of business of the debtor." 10/5/94 Tr. at 24–25.[10] This Court cannot determine who the witness was, or what position the witness held with the

---

**10.** Peachtree also directs this Courts attention to a subsequent colloquy wherein Peachtree's counsel again informed the Bankruptcy Judge that Peachtree had a witness who would testify re-

garding proper venue. 10/5/94 Tr. at 44–45. This excerpt, however, is completely uninformative.

debtor, or what specifically the witness would have stated. Thus, we decline to accept Peachtree's suggestion (unsupported by any authority) that this excerpt should be viewed in the nature of an offer of proof and considered true for purposes of appeal.

■■■■ The determination of whether venue of Peachtree's chapter 11 case is proper in the Northern District of Illinois involves in the first instance a finding of fact, namely the location of Peachtree's principal place of business. *See In re Great Lakes Hotel Assocs.*, 154 B.R. at 671 ("There is virtual consensus on the fact that the determination of a debtor's principal place of business is a question of fact.") (see cases cited therein). In the instant case, this Court cannot locate any finding of fact by the Bankruptcy Court that Peachtree's principal place of business is in this district. Nor did the Bankruptcy Court explicitly conclude as a matter of law that venue of the bankruptcy case was proper in this district. As far as this Court has been able to determine from the record, the only determination made by the Bankruptcy Court *vis-a-vis* venue of the underlying chapter 11 case was that the Granaders lacked standing to challenge venue of the chapter 11 case. *See* 10/5/94 Tr. at 50–51. In view of this determination, the Bankruptcy Court received no evidence from Peachtree as to its principal place of business. And, the Granaders evidentiary showing was devoted entirely to matters relating to venue of the adversary proceeding; they introduced no evidence as to Peachtree's principal place of business. As a result, the Bankruptcy Court record does not permit this Court to make any *de novo* determination as to whether venue of the bankruptcy case is proper in this district. Accordingly, we must vacate the Bankruptcy Court's denial of the Granaders' motion to dismiss or transfer the chapter 11 case on venue grounds and remand the case for further proceedings. *See In re Malanfant*, 108 B.R. 279, 281 (D.Colo.1989). If, after a hearing on the matter, the Bankruptcy Court determines that venue is proper in this District, the Court should go on to make additional findings of fact and conclusions of law as to whether a transfer of the chapter 11 case or a transfer of the adversary proceeding is warranted in the interest of justice

or for the convenience of the parties. *See* FED.R.BANKR.P. 7052. In making its findings of fact regarding the appropriateness of transfer, the Bankruptcy Court should explicitly address those factors commonly considered when deciding a motion to transfer venue such as: location of creditors of every kind; location of debtor; location of witnesses necessary to the administration of the estate; location of assets; and, which forum would provide for the most efficient and economic administration of the estate. *See, e.g., In re Pickwick Pl. Ltd. Partnership*, 63 B.R. 290 (Bankr.N.D.Ill.1986). The court may also consider any local interests that weigh in favor of retaining or transferring the case. *See In re Consolidated Equity Properties*, 136 B.R. 261, 266 (D.Nev.1991). With respect to the "interest of justice" component, the court should address whether transfer of the underlying bankruptcy case or the adversary proceeding would "promote the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness." *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1391 (2d Cir.1990).

■■■ In view of the foregoing, we believe that the most prudent course of action regarding the Granaders' appeal of the adversary proceeding is to dismiss that appeal without prejudice pending a determination by the Bankruptcy Court as to the proper venue of the underlying chapter 11 case. In the event that the Bankruptcy Court determines that venue of the chapter 11 case in this district is proper and that the interests of justice do not favor transfer, the Granaders may refile their appeal of the adversary proceeding at which time we shall consider the arguments raised therein on their merits.

■■■■ If, on the other hand, the Bankruptcy Court determines that venue of the chapter 11 case is improper in this district, then it must either dismiss the case or transfer it to a district where venue is proper. This Court concurs with those that have concluded that the Bankruptcy Court has no discretion to retain a case that has been filed in an improper venue. *See In re Columbia Western, Inc.* 183 B.R. 660, 665 (D.Mass. 1995); *In re Berryhill*, 182 B.R. 29, 31

(Bankr.W.D.Tenn.1995) (dicta); *In re Great Lakes Hotel Assocs.*, 154 B.R. 667, 670 (E.D.Va.1992); *In re Petrie*, 142 B.R. 404, 407 (Bankr.D.Nev.1992); *Matter of Sporting Club at Ill. Ctr.*, 132 B.R. 792, 798 (Bankr. N.D.Ga.1991); *ICMR, Inc. v. Tri–City Foods, Inc.*, 100 B.R. 51, 54 (D.Kan.1989); *In re Pick*, 95 B.R. 712, 714–15 (Bankr.D.S.D. 1989); *see also* 8 COLLIER ¶ 1014.05, at 1014–11—1014–12; *but see In re Lazaro*, 128 B.R. 168 (W.D.Tx.1991).

We further note that the Granaders argue that in the event that venue is found to be improper, all of the Bankruptcy Court's orders and judgments in this case must be vacated. Indeed, several courts have reversed plaintiff's judgments in cases that were improperly venued. *See Olberding v. Illinois Cent. R.R.*, 346 U.S. 338, 74 S.Ct. 83, 98 L.Ed. 39 (1953); *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 296–97 (3d Cir.1994); *United States for the Use and Benefit of Harvey Gulf Int'l Marine, Inc. v. Maryland Casualty Co.*, 573 F.2d 245, 248 (5th Cir.1978). We will not, of course, render an advisory opinion on this issue. But it is another reason for declining to entertain the Granaders' appeal of the adversary proceeding at this time.

## CONCLUSION

Although this Court is extremely reluctant to upset the carefully crafted work of the Bankruptcy Court in this hotly contested dispute, the Court has concluded that the Bankruptcy Court must evaluate the Granaders' motion to dismiss or transfer on the merits and create an appropriate record, pursuant to Fed.R.Bankr.P. 7052, for potential further review by this Court.[11]

Regarding 95 C 1198, for the foregoing reasons, the Order of the Bankruptcy Court denying the Granaders' motion to dismiss or transfer venue of the chapter 11 case on, *inter alia*, venue grounds is vacated and remanded for further proceedings consistent with this opinion. The Granaders' appeal of

11. Although we remand this case for further proceedings, we note that our review of the record reveals that this case has presented many vexatious issues to the Bankruptcy Court and this

the adversary proceeding (District Court No. 95 C 125) is dismissed without prejudice.

Court, which has the utmost respect for his colleague, is quite mindful of the "battlefield" decisions that are often made in the bankruptcy arena.